SALVATORE CONSIGLIO *v.* WARDEN, CONNECTICUT STATE PRISON

ALCORN, C. J., HOUSE, COTTER, THIM and RYAN, Js.

Argued October 8—decided December 15, 1970

*George A. Athanson,* special public defender, for the appellant (plaintiff).

*Jerrold H. Barnett,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *David B. Salzman,* assistant state's attorney, for the appellee (state).

COTTER, J. The plaintiff was sentenced on February 13, 1959, by the Superior Court to imprisonment for not less than nine nor more than thirty years after he had pleaded guilty to twenty-six counts of statutory burglary and to being a third offender.[1] The plaintiff instituted this action of habeas corpus in December, 1966,[2] and in his amended petition he has alleged certain violations of his constitutional rights. These include the following claims which are material to this appeal: On and after his arrest on December 11, 1958, he was denied the assistance of counsel; he was not advised of his right to remain silent; he was not warned that anything he said could be used against him; a confession was obtained from him under duress and coercion by the police; and he was induced to plead guilty on February 13, 1959, because of ill-advised instructions of counsel.

The trial court, after a full hearing on the merits, denied the plaintiff's application for a writ of habeas corpus in a judgment rendered July 23, 1968. Thereafter, the trial court granted statutory certification for an appeal to this court pursuant to § 52-470 of the General Statutes.

The following facts are not in dispute: The plaintiff was arrested on December 11, 1958, and taken to the Hamden police station. He was not advised

[1] General Statutes § 54-121 provides that in a case in which a person has been convicted as a third offender, "the court shall sentence such person to a maximum of thirty years."

[2] The plaintiff has heretofore instituted two habeas corpus actions, one in July, 1961, and the second in June, 1964. See *Consiglio* v. *Warden,* 153 Conn. 673, 220 A.2d 269.

of his constitutional rights at the time of his arrest. After his arrest and before he had the assistance of counsel, he was taken in the custody of the police to a number of houses in New Haven and surrounding towns where he had allegedly committed burglaries. Thereafter, before he was presented in the Hamden Town Court, the plaintiff signed a confession admitting the commission of a number of the offenses for which he was later charged in the Superior Court. It did not appear in evidence how many or which of the offenses, with which he was later charged, he had admitted in his confession. Two nights after his arrest, private counsel, Attorney Anthony J. Criscuolo, was retained to represent him. This attorney represented the plaintiff on December 15, 1958, when he was presented in the Hamden Town Court, where he was charged with eight counts of statutory burglary and six counts of larceny. The plaintiff pleaded not guilty to all counts against him and waived examination. He was bound over to the Superior Court under a bond of $25,000. At all times in the Superior Court, the plaintiff was represented by Attorney John M. Murphy, the public defender for New Haven County. The Superior Court information against the plaintiff, in its first part, charged twenty-six counts of statutory burglary and, in its second part, charged the plaintiff with being a third offender. On January 22, 1959, in the absence of the court, pursuant to Practice Book § 487, the plaintiff was informed by the clerk that he was being charged in the second part of the information as a third offender.

On January 27, 1959, the plaintiff pleaded not guilty to the first part of the information and elected to be tried by a jury of twelve, and on January 29, 1959, his trial commenced and a jury were impan-

eled. Before, however, any evidence was taken, the plaintiff changed his plea to guilty on each of the twenty-six counts of statutory burglary in the first part of the information and also pleaded guilty to the charge of being a third offender. A presentence report was ordered and thereafter filed with the court on February 10, 1959. On February 13, 1959, the plaintiff, however, withdrew his pleas of guilty to both parts of the information, entered pleas of not guilty and again elected to be tried by a jury on each count. Thereafter, on the same day, February 13, 1959, in open court and in the presence of his attorney, the plaintiff again changed his plea to guilty on all counts in the first part of the information, reserving his not guilty plea to the second part. After a further discussion with his counsel, he pleaded guilty to the second part also.

These changes of plea were preceded by a lengthy interrogation from the court which started with: "What is your situation now, Consiglio? What do you want to do?" To this the plaintiff replied, "I was speaking to Mr. Murphy downstairs all about it." When the court asked what was discussed and what the plaintiff wished to do now, the answer was: "I guess I didn't realize what I was doing. . . . I would rather change this plea. I figure I might be worse off than the time before later on, so supposing I go through and face it." The court then asked to what the plaintiff wished to change his plea, to which the plaintiff answered: "To guilty." The court then reminded the plaintiff that there were twenty-six counts, and the plaintiff answered that he realized that and he would like hospitalization to find out what caused him to get into this type of trouble.

The court then further reminded the plaintiff that he had pleaded guilty before to being a third

offender, and the plaintiff stated: "On the third offender I want to plead not guilty." After a discussion with his attorney, the plaintiff told the court that "I think I plead guilty on that third offender". To the court's question "Why did you change your mind?" the plaintiff answered: "Well as Mr. Murphy said, it can be proved." To the court's inquiry as to the plaintiff's knowledge of how the third offender charge would be proved, the plaintiff stated that "[t]his would be my third time at the [sic] Field."[3] The court then specifically asked again as to whether the plaintiff knew he was a third offender to which the plaintiff answered "Yes."

Again before the plaintiff was put to plea the court stated: "Is there any question but what you want to go through with a plea of guilty on all these twenty-six counts and you also want to plead guilty to being a third offender?" To this the plaintiff answered "Yes, sir". To the court's final question "There is no question in your mind about that?" the plaintiff answered "No, sir".

At the hearing on this petition of habeas corpus in 1968, the court found there was no evidence that the plaintiff had been illegally detained or that his confession related to all twenty-six counts to which he pleaded guilty or that the existence of the confession motivated him to plead guilty, and the court further concluded that the pleas of guilty were not the product of an illegal detention, a coerced confession or a denial of his right to counsel or ill-advised instructions of counsel but were made voluntarily, understandingly and on advice of counsel and constituted a waiver of all nonjurisdictional defenses.

---

[3] The Connecticut State Prison when located at Wethersfield was referred to in slang as "the Field".

The plaintiff assigns as error the conclusions of the court that his pleas of guilty were made voluntarily, understandingly and on the advice of counsel and that they were not the product of an illegal detention, a coerced confession, a denial of his right to counsel or of the ill-advised instructions of counsel unduly influencing him. These conclusions, which are to be tested by the finding, "must stand unless they are legally or logically inconsistent with the facts found or unless they involve the application of some erroneous rule of law material to the case." *Johnston Jewels, Ltd.* v. *Leonard,* 156 Conn. 75, 79, 239 A.2d 500. In attacking the court's conclusions, the plaintiff seeks to correct the finding by adding certain paragraphs of his draft finding in which he claims he was confined from seven to ten days, during which period of time he was taken manacled by the police to scenes of alleged burglaries, was otherwise threatened and abused, and was allowed to retain counsel after a confession was obtained, all of which he claims were material and undisputed facts. The court found that the plaintiff did not prove these claims. Although these claims have been stated several times in the plaintiff's brief, as well as the claim that he was unduly influenced by his counsel, the public defender, which claim the court also found was not proven, he has not printed any evidence in an appendix to his brief to support them. A party claiming that a fact should be found on the ground that it is material and either admitted or undisputed should print the evidence or the portion of the transcript upon which the claim is based. Practice Book § 717. To obtain an addition to a finding on the ground that omitted facts were either admitted or undisputed, the appellant must point to some part of the appendix, the pleadings or an exhibit properly

before this court which shows that the appellee admitted the fact in question or that its truth was conceded to be undisputed. *State* v. *Dukes,* 157 Conn. 498, 500, 255 A.2d 614. The matters sought to be added are not shown to be admitted or undisputed. Thus, these assignments of error cannot be considered. *Marshall* v. *Newington,* 156 Conn. 107, 111, 239 A.2d 478.

The plaintiff has further assigned as error, in that they were found without evidence, the court's findings that there was no evidence that the existence of the plaintiff's confession motivated him to plead guilty or that he was illegally detained. Again, the plaintiff has printed no evidence, leaving it to the defendant to print the evidence which he claims supports the challenged findings. Practice Book § 718; *Brodsky* v. *Brodsky,* 153 Conn. 299, 302, 216 A.2d 180. There is ample evidence printed in the appendix to the defendant's brief to support the findings which the plaintiff claims were found without evidence.

In regard to the conclusion of the court that there was no evidence of an illegal detention, there is the plaintiff's own testimony, at the trial of this matter, that when he was arrested in 1958 he was a parole violator and that he was unable to make bond. See General Statutes § 54-127. He had been confined in the state prison in 1955 for statutory burglary of a dwelling in the daytime, on seven counts, and was serving a sentence of not less than two nor more than ten years. After serving his minimum sentence he had been released on parole. As to the conclusion that there was no evidence that his confession motivated him to plead guilty, the evidence showed that the factors motivating the pleas of guilty were that the plaintiff had been informed

that the state had ten to fifteen witnesses to testify against him; that he felt he would receive a more severe sentence after trial than he had received for a previous offense, presumably for which in 1959 he was on parole, when he told the court, in 1959, "I figure I might be worse off than the time before later on, so supposing I go through and face it"; the knowledge of the plaintiff that his third offender charge could be proved; and probably most important his knowledge, prior to the entry of his pleas of guilty on February 13, 1959, of the agreed recommendation for sentence which would be submitted to the court for its approval. Nowhere in the plaintiff's lengthy conversation with the court which preceded the entry of his pleas or in the remarks of the public defender or the plaintiff at the sentencing which occurred immediately afterward and where the plaintiff succeeded in securing a reduction of the recommended sentence was any mention made of the confession. The only mention of a confession or admission was by the state's attorney at the time of sentencing after the pleas had been entered.

The established facts found by the court logically supported its conclusions that the plaintiff's pleas of guilty were made voluntarily, understandingly and on the advice of counsel and that he had not proved his claim that the pleas were involuntary because he, "acting on the ill-advised instructions of counsel, was unduly influenced and induced to plead guilty to a series of offenses that were founded upon information based upon an illegal detainment and upon a confession illegally obtained by the police under duress, coercion and intimidation." "[A] defendant who alleges that he pleaded guilty because of a prior coerced confession is not, without

more," entitled to a habeas corpus hearing on the voluntariness of his plea. *McMann* v. *Richardson,* 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763. We have said that a guilty plea cannot stand if it was rendered involuntary by a coerced confession but that "[t]he mere occurrence of a constitutional violation is not, however, sufficient to render a plea of guilty involuntary and thus susceptible to nullification in habeas corpus proceedings." *Williams* v. *Reincke,* 157 Conn. 143, 148, 249 A.2d 252. The question of the validity of the plea is: "Was the plea a voluntary and intelligent act of the defendant?" A plea of guilty is not subject to collateral attack "on the ground that it was motivated by a coerced confession unless the defendant was incompetently advised by his attorney", and the defendant must show "gross error on the part of counsel when he recommended that the defendant plead guilty instead of going to trial and challenging" the admissibility of a confession. *McMann* v. *Richardson,* supra, 772.

An otherwise valid plea is not involuntary because it was induced by a defendant's desire to limit the possible maximum penalty, and even if the defendant's confession had not been admissible, it does not necessarily follow that, because of an erroneous belief of the accused or his counsel to the contrary, such an error in judgment on the part of the accused or his counsel is sufficient to render the guilty plea unintelligent so as to entitle the defendant to a new trial. *Parker* v. *North Carolina,* 397 U.S. 790, 795, 90 S. Ct. 1458, 25 L. Ed. 2d 785; see *North Carolina* v. *Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162. A guilty plea made by a defendant in the hope of a more lenient sentence does not necessarily render it invalid under the fifth amendment, and the holding that such a plea must be intelligently made

to be valid does not require that such a plea be vulnerable to later attack if the defendant did not correctly assess every relevant circumstance entering into his decision. *Brady* v. *United States,* 397 U.S. 742, 751, 90 S. Ct. 1463, 25 L. Ed. 2d 747; see *North Carolina* v. *Alford,* supra.

The plaintiff claims, inter alia, that the pleas of guilty cannot be considered as having been voluntarily given because they were obtained in violation of his constitutional rights and that the guilty plea should not have been entered because the record does not show that the plaintiff understood the meaning and significance of the charges against him. The first part of the plaintiff's claim in this instance apparently is grounded on the court's findings that he was not advised of his constitutional rights when he was arrested in 1958 and when he was subsequently taken by the police to scenes of alleged burglaries before he had the assistance of counsel and upon its conclusion that he had proved that, when he was arrested and when he made his confession, he was not advised of his right to remain silent or warned that anything he might say could be used against him. The warnings specified in *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, and the rule that an accused must have the benefit of counsel at all critical stages of the proceedings, announced in *Escobedo* v. *Illinois,* 378 U.S. 478, 490, 84 S. Ct. 1758, 12 L. Ed. 2d 977, were not required in December, 1958, at the time of the plaintiff's conviction. *Johnson* v. *New Jersey,* 384 U.S. 719, 86 S. Ct. 1772, 16 L. Ed. 2d 882; *Williams* v. *Reincke,* supra, 149; *Walters* v. *Warden,* 155 Conn. 316, 324, 325, 232 A.2d 112. The rules announced in *Escobedo* and *Miranda* are relevant on the issue of voluntariness of the guilty pleas although they cannot be

applied directly to the present case. On the record before us, however, in deciding the appeal from a denial of an application for habeas corpus brought by the plaintiff, we find nothing in the record which would permit us to disturb the conclusion of the trial court that the pleas of the plaintiff were voluntarily and understandingly made.

The plaintiff further argues in this connection that we reverse because of a claimed failure of the trial court to follow the holding in *Boykin* v. *Alabama,* 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L. Ed. 2d 274, which, in addition to reiterating the rule that a plea of guilty must be intelligent and voluntary, mandated the additional element that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily. The court in that case, although it does not state what the record must "disclose" in order for it to be considered sufficient in that regard, went on to say (p. 243) that it could not presume "from a silent record" a waiver of the federal constitutional rights involved, viz., the privilege against compulsory self-incrimination guaranteed by the fifth amendment and applicable to the states by reason of the fourteenth, the right to trial by jury and the right to confront one's accusers. In *McCarthy* v. *United States,* 394 U.S. 459, 464, 465, 89 S. Ct. 1166, 22 L. Ed. 2d 418, the court, in construing Rule 11 of the Federal Rules of Criminal Procedure,[4] based its

---

[4] The pertinent portion of Rule 11 is as follows: "The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of nolo contendere without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. . . . The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea."

decision solely upon its construction of Rule 11 which it decided pursuant to its supervisory power over the lower federal courts and without reaching constitutional arguments, held that the Rule is designed to assist the district judge in making the determination that a guilty plea is voluntary and that it (p. 465) "is intended to produce a complete record at the time the plea is entered of the factors relevant to this voluntariness determination." The court stated that in addition to an inquiry into the defendant's understanding of the nature of the charge and the consequences of his plea, the rule "also requires the judge to satisfy himself that there is a factual basis for the plea." Id., 467.

The Supreme Court of the United States has reiterated its position recently in *North Carolina* v. *Alford,* 400 U.S. 25, 31, 91 S. Ct. 160, 27 L. Ed. 2d 162, in the following manner: "The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. See *Boykin* v. *Alabama,* 395 U.S. 238, 242 [89 S. Ct. 1709, 23 L. Ed. 2d 274]; *Machibroda* v. *United States,* 368 U.S. 487, 493 [82 S. Ct. 510, 7 L. Ed. 2d 473]; *Kercheval* v. *United States,* 274 U.S. 220, 223 [47 S. Ct. 582, 71 L. Ed. 1009]." Footnotes 3 and 4 to the *Alford* case state the following: "At the state court hearing on post-conviction relief, the testimony confirmed that Alford had been fully informed by his attorney as to his rights on a plea of not guilty and as to the consequences of a plea of guilty. Since the record in this case affirmatively indicates that Alford was aware of the consequences of his plea of guilty and of the rights waived by the plea, no issues of substance under *Boykin* v. *Alabama,* 395 U.S. 238 [89 S. Ct. 1709, 23 L. Ed. 2d 274]

(1969), would be presented even if that case were held applicable to the events here in question. Before Alford was sentenced, the trial judge asked Alford about prior convictions. Alford answered that, among other things, he had served six years of a ten-year sentence for murder, had been convicted nine times for armed robbery, and had been convicted for transporting stolen goods, forgery, and carrying a concealed weapon."

In addition to the facts already discussed, the facts of record, which is not "a silent record" as in *Boykin* and which is not clearly deficient under that case, disclosed the following: On February 13, 1959, the court questioned the plaintiff personally and at length and ascertained that the change of plea to the twenty-six counts of statutory burglary was made after a discussion with the public defender who at all times represented him in the Superior Court and that it was voluntarily made. The court further specifically ascertained from the plaintiff the factual basis of the charge that he was a third offender. The plaintiff testified at the habeas corpus hearing that "all the charges [were read off], all the counts and everything" when his trial started. The trial commenced on January 29, 1959, immediately after the plaintiff's pleas of guilty, and the state's attorney, as a part of the sentencing procedure, read to the court, in the plaintiff's presence, the incidents which formed the basis of the burglary counts, in addition to a review of the plaintiff's prior confinements in the state prison. The plaintiff informed the court as to certain of the burglary incidents or specified charges in the counts of the information to which he had already pleaded guilty and stated that, although he admitted entering these houses and taking the money, the state was in error

in the amounts taken or in the manner of entry. A presentence investigation was filed on February 10, 1959, which had been ordered by the court after the plaintiff's pleas of guilty on the preceding January 29. Pursuant to General Statutes § 54-109, the probation officer was required to inquire into the circumstances of the offense, the criminal record, social history and present condition of the plaintiff. This written report of his investigation was required to be presented to and considered by the court. The record of the proceedings in 1959 shows that this was done.

Although we think that the record in the present case is not clearly deficient under the *Boykin* rule for the reasons stated, we need not resolve this issue since in our view the *Boykin* rule has only prospective application. The pleas in the criminal case were entered February 3, 1959, more than ten years before the decision in the *Boykin* case, decided June 2, 1969. Although the United States Supreme Court has not passed on the question whether the *Boykin* case is retroactive, even though it declined in *Halliday* v. *United States,* 394 U.S. 831, 833, 89 S. Ct. 1498, 23 L. Ed. 2d 16, to apply *McCarthy* v. *United States,* 394 U.S. 459, 89 S. Ct. 1166, 22 L. Ed. 2d 418, retroactively, nevertheless, many courts in well-reasoned opinions have held that the *Boykin* case is not retroactive. See *State* v. *Griswold,* 105 Ariz. 1, 457 P.2d 331; *In re Tahl,* 1 Cal. 3d 122, 460 P.2d 449; *Grass* v. *State,* 263 A.2d 63, 65 (Me.); *Silverberg* v. *Warden,* 7 Md. App. 657, 256 A.2d 821; *Commonwealth* v. *Godfrey,* 434 Pa. 532, 254 A.2d 923; *Ernst* v. *State,* 43 Wis. 2d 661, 170 N.W.2d 713; *Mathis* v. *Warden,* 86 Nev. 439, 471 P.2d 233; *Endsley* v. *Cupp,* 1 Ore. App. 169, 459 P.2d 448; *Flint* v. *Sharkey,* 268 A.2d 714 (R.I.); *Meller* v.

*Missouri,* 431 F.2d 120 (8th Cir.); *United States ex rel. Hughes* v. *Runelle,* 419 F.2d 116 (3d Cir.).

"[G]uilty pleas are not constitutionally forbidden, because the criminal law characteristically extends to judge or jury a range of choice in setting the sentence in individual cases, and because both the State and the defendant often find it advantageous to preclude the possibility of the maximum penalty authorized by law." *Brady* v. *United States,* 397 U.S. 742, 751, 90 S. Ct. 1463, 25 L. Ed. 2d 747. The guilty plea is a waiver of constitutional rights—a waiver of nonjurisdictional defenses—and where, as here, the record discloses that such an act was voluntary, knowing, intelligent and done with sufficient awareness of the relevant circumstances and likely consequences, we hold that the plaintiff's plea of guilty was valid. Id., 748.

There is no error.

In this opinion the other judges concurred.