## STATE OF CONNECTICUT *v.* DERWIN GAMBLE
### (10132)

DUPONT, C. J., NORCOTT and FOTI, Js.

Argued December 11, 1991—decision released March 10, 1992

*Kent Drager,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (defendant).

1

*Paul J. Ferencek,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Warren Maxwell,* senior assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of conviction rendered by the court, following a plea[1] of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1). The defendant claims that the trial court improperly (1) denied his motion to correct the judgment and the mittimus, (2) characterized his straight guilty plea as one entered under *Alford,*[2] (3) accepted the plea under *Alford* without a proper canvassing, (4) accepted the plea without properly explaining the necessary elements, and (5) accepted a plea not made knowingly, intelligently and voluntarily. We reverse in part the judgment of the trial court.

The facts are not in dispute. The defendant was charged and tried on the crime of murder in violation of General Statutes § 53a-54a. The court declared a mistrial because of a deadlocked jury. Prior to the commencement of a second trial, the state filed a substitute information charging the defendant with manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1). The defendant entered a plea and, following the canvass, the court accepted the plea. On January 25, 1991, the court sentenced the defendant, in compliance with the plea agreement, to a term of twenty years incarceration. On April 5, 1991, the defendant filed this appeal. Following a hearing on June 26, 1991, the court denied the defendant's "Motion to Cor-

---

[1] The parties dispute the nature of the plea. The judgment file states: "To this information, on November 14, 1990, the defendant entered a plea of guilty under the doctrine of [*North Carolina* v.] *Alford* . . . ." The record is clear that the defendant never submitted his guilty plea under *Alford.*

[2] *North Carolina* v. *Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

rect Illegal Sentence Disposition." On July 15, 1991, the defendant filed an amended appeal to include the denial of this motion.

The defendant argues that the trial court should have granted his motion to correct judgment and mittimus, filed pursuant to Practice Book § 935,[3] because he pleaded guilty to first degree manslaughter under only the theory of accessorial liability.[4] We agree.

The record reveals the following as relevant:

"Mr. Graham [Defense Counsel]: May the prior plea of not guilty and jury election be withdrawn?

"The Court: Okay.

"Mr. Maxwell [State's Attorney]: I need the court's permission to file a substitute information.

"The Court: Okay.

"Mr. Maxwell: Mr. Gamble had originally been charged with the crime of murder in violation of 53a-54a. And there has been a plea agreement here. The state's consideration for that agreement is to take the charge and reduce the charge from a murder to a manslaughter in the first degree in violation of 53a-55 (a) (1).

"The Court: Okay.

"Mr. Graham: And to make it clear, I've discussed this with Mr. Maxwell. The plea the defendant is enter-

---

[3] Practice Book § 935 provides: "The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner."

[4] General Statutes § 53a-8 provides: "CRIMINAL LIABILITY FOR ACTS OF ANOTHER. A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

ing to this manslaughter charge is as an accessory and Mr. Maxwell is going to present the factual basis on a—whatever he chooses. But what I'm going to submit to the court as a factual basis for what we're entering the plea on is the testimony of Mr. Gamble in the prior trial where he admits to the conduct that he did in this case. And by some stretches of evidence it could be deemed to be an accessory to a manslaughter but not the actual principal actor.

"The Court: Okay.

"Mr. Graham: To save you the burden of reading those many pages, we discussed this in a chambers conference about a week and a half ago. And basically—

"The Court: Well, I recall the facts. He claims he came out with a gun; he shot the man in the buttocks; the other man took the gun and shot the man and killed him.

"Mr. Graham: That's correct. And that's his testimony. And the original discussions in this case were aimed at a plea to the assault, which he actually confesses to in that statement.

"The Court: Right. The whole issue comes down to [the fact] that he's not admitting that he shot the fatal bullet, but he's pleading to the manslaughter one or the accessory to the manslaughter one to avoid going to trial on the charge of murder and face the risk of being found guilty and getting sixty years in jail. And he acknowledges that there is a probability that he may have gotten convicted. Right?

"Mr. Graham: That's right. Well, a certainty he could be convicted but for an assault first degree on the very facts that he concedes which carries the same penalty as the charge he's pleading to.

"The Clerk: Would the defendant please state his name and date of birth for the record?

"The Defendant: Derwin Gamble, November 24, 1966.

"The Clerk: Derwin Gamble, you've been charged with a substituted information in docket number 14-55491 which has been redesignated CR89-364468 with the crime of manslaughter in the first degree at the town of Hartford on or about April 23, 1989, in violation of Connecticut General Statute Number 53a-55 (a) (1). How do you plead, guilty or not guilty?

"The Defendant: Not guilty for the manslaughter.

"Mr. Graham: It's as an accessory, as I just mentioned to the court.

"The Court: Okay, you're being put to plea as being an accessory to manslaughter in the first degree in violation of 53a-55 subsection one, and I believe, it's 53a-8. Now what's your plea to that charge?

"The Defendant: That's accessory to—

"The Court: Accessory to manslaughter.

"The Defendant: Guilty, sir."

The court then proceeded to canvass the plea of guilty and thereafter:

"The Court: And you've had enough time to talk to your lawyer about this case and your decision to plead guilty?

"The Defendant: Yes, I have.

"The Court: He's explained to you the elements of the offense and the evidence the state would have presented at trial?

"The Defendant: Yes, Your Honor.

"The Court: And you've plead to a Class B felony. You could get twenty years in jail and/or a $10,000 fine. And manslaughter in the first degree, you're guilty of that when with intent to cause a serious physical injury to another person you cause the death of that person. Now wait a minute, I'm not through yet. But you're charged as an accessory which means that you—

"Mr. Maxwell: If Your Honor please, the charge is—may I interrupt the court for a moment? I need the court's permission to do that.

"The Court: Yes.

"Mr. Maxwell: Accessory is merely an alternative means of proving the crime of assault in the first degree. And he—

"The Court: I know that—manslaughter.

"Mr. Maxwell: Manslaughter, excuse me—manslaughter in the first degree. He wants to make his plea consistent with his evidence in the first trial, which I don't object to. But the underlying basis for the plea is as principal. Now, it's a combination of accessoriness or an *Alford* plea under North Carolina. But the information is [not] going to reflect 53a-8 in the information.

"The Court: And if he's tried as a principal a jury could come back and find him guilty as an accessory?

"Mr. Maxwell: That's correct, sir.

"The Court: And you agree with that also, Mr. Graham?

"Mr. Graham: Yes sir.

"The Court: Okay. So what I'm doing is, I'm saying that to be found guilty, he has you charged as the principal. If the facts came out that you were acting with the mental state required for the commission of an offense you aided another person in conduct, which

would be the manslaughter one, they would find you guilty of manslaughter one. Even under your version. Do you understand that? No?

"The Defendant: No, I don't.

"The Court: Okay, go see Judge Freed.

"Mr. Graham: I don't think this is a withdrawal of the plea, Judge.

"The Court: Well, no. See, now the problem is he doesn't agree with that. And he's being charged as a principal. He could be convicted as an accessory. Now, for me to canvass him, even under his theory, it would be that he was there aiding someone else who actually committed the killing.

"Mr. Graham: What you asked him though is, do you understand that. And his response to your question, he said, 'No.' But that doesn't mean he doesn't want to continue with this proceeding here.

"The Court: But you understand, Mr. Gamble, that you're charged with manslaughter, okay? And I've already read what manslaughter in the first degree is, what the state would have to prove on that. At trial, if the state proved that you were the one who shot the guy or you were with the person who shot the gun and you intentionally aided the person who shot the gun, they could find you guilty. Do you understand that?

"The Defendant: Of an accessory to manslaughter.

"The Court: Well they would—okay, yes. You got me now?

"The Defendant: Yes, I do. And I plead guilty to the accessory to manslaughter.

"The Court: Okay, so now we're back on track again, okay? Well, you're pleading guilty to manslaughter. I'm just trying to tell you that the state, at the trial, if they

prove you shot the gun or with someone who shot the gun and killed the person, the jury could come back and find you guilty, understood?

"The Defendant: Understood.

"The Court: Okay. Is that agreeable to you?

"Mr. Graham: I think I understand.

"The Court: Do you understand that too, so that we're all agreed on this, Mr. Maxwell?

"Mr. Maxwell: Yeah, it's all right with me the way the court put it forth. I don't know if he understood that it's really—under the law an accessory is just as guilty as the principal. There's no difference which one he is.

"Mr. Graham: Yes.

"The Court: You understand that Mr. Gamble?

"The Defendant: Yes.

"Mr. Graham: The choices of words here are very important for reasons that have very little to do with what's happening here.

"The Court: Okay. Whether you aid someone or you do it yourself, it's the same blame, same punishment, understand?

"The Defendant: Yes I do."

The court continued to canvass and thereafter:

"The Court: Okay. Once I accept your plea today you'll come back on January 25 for sentencing. On that day you will not be allowed to take your plea back except with my permission. Do you understand that?

"The Defendant: Yes, Your Honor.

"The Court: So, if there's a reason why you don't want me to take your plea today tell me now, okay?

"The Defendant: I just want to have the correct understanding that my charge is an accessory to manslaughter.

"The Court: No, the state has charged you with manslaughter. Now, what I'm saying to you is if you were tried before a jury, the jury could convict you as the principal or as the accessory. You're pleading guilty to a manslaughter charge based upon your version of the facts that you were not the one who actually killed this man but that you were there with him when it happened, okay? Got it?

"The Defendant: Yes.

"The Court: But the charge is going to read manslaughter. But your version of the facts is you weren't the shooter; you were there with the shooter. Do you understand that?

"The Defendant: Yes sir."

The parties agree that being an accessory is not a separate crime to manslaughter in the first degree but rather an alternative way of committing the offense of manslaughter. "It is well established in this state that there is no such crime as 'being an accessory.' " *State* v. *Foster,* 202 Conn. 520, 528, 522 A.2d 277 (1987). Rather, the accessory statute, General Statutes § 53a-8, merely provides an alternative theory under which liability for the underlying substantive crime may be proved. *State* v. *Harris,* 198 Conn. 158, 163, 502 A.2d 880 (1985)." *State* v. *Hopkins,* 25 Conn. App. 565, 568–69, 595 A.2d 911, cert. denied, 220 Conn. 921, 597 A.2d 342 (1991).

The record is clear that the state never formally charged the defendant as an accessory, but did recognize that the defendant did not admit to the factual allegations that he was the principal actor. The defendant admitted and the court accepted only that he was an

accessory to manslaughter. "[A] defendant may be convicted as an accessory even though he was charged only as a principal as long as the evidence presented at trial is sufficient to establish accessorial conduct." *State* v. *Fleming,* 198 Conn. 255, 268 n.15, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986); *State* v. *Crump,* 201 Conn. 489, 493, 518 A.2d 378 (1986); *State* v. *Johns,* 184 Conn. 369, 373–74 n.7, 439 A.2d 1049 (1981). The fact that the defendant was convicted because he pleaded guilty rather than exercise his constitutional right to a trial is of no consequence under these circumstances. "A guilty plea is itself a conviction." *State* v. *Wright,* 207 Conn. 276, 287, 542 A.2d 229 (1988). The only predicate for charging the defendant with violating General Statutes § 53a-55 (a) (1) is direct involvement in the crime. Liability does not turn on whether he was found to be a "principal" or an "accessory." *State* v. *Harris,* supra, 165. In the present case, the court accepted an alternate theory of liability. He was found to be responsible for the crime of manslaughter in the first degree because he intentionally aided in its commission. The requisite intent is twofold: To intend to aid the principal and in so aiding to intend to commit the offense with which he is charged. *State* v. *Crump,* supra, 495. Accessorial liability does not require, however, that the defendant act with the conscious objective to cause the result described by statute, and, thus, the accessory may be liable in aiding another if he acts intentionally, knowingly, recklessly or with criminal negligence toward that result, depending on the mental state required by the substantive crime. *State* v. *Foster,* supra, 530–31. It is well established in Connecticut that "there is no practical significance in being labeled an 'accessory' or a 'principal' for the purpose of determining criminal responsibility." *In re Luis R.,* 204 Conn. 630, 637, 528 A.2d 1146 (1987).

The defendant steadfastly maintains that he did not cause the death, and while the distinction between accessory and principal may be irrelevant as to criminal liability, it was relevant to the entering and acceptance of the plea. The defendant is not claiming that the sentence imposed is illegal but rather that it was, instead, "imposed in an illegal manner" as these words are used in Practice Book § 935, and that, therefore, the judgment and the mittimus issued should be corrected to conform to his plea as an accessory to manslaughter.

"Sentences imposed in an illegal manner have been defined as being 'within the relevant statutory limits but . . . imposed in a way which violates defendant's right . . . to be addressed personally at sentencing and to speak in mitigation of punishment . . . or his right to be sentenced by a judge relying on accurate information or considerations solely in the record, or his right that the government keep its plea agreement promises . . . .' " *State* v. *McNellis,* 15 Conn. App. 416, 444, 546 A.2d 292, cert. denied, 209 Conn. 809, 548 A.2d 441 (1988).

In this case, the defendant entered his plea pursuant to his belief that he could plead to manslaughter in the first degree as an accessory. A judgment of conviction must conform to the crime with which the defendant was charged, and the sentence imposed must conform to that crime. If the state prosecutes a defendant as a principal pursuant to a bill of particulars, and he prepares and presents his defense on that basis, the jury cannot be charged that he could be found guilty of accessorial liability. *State* v. *Steve,* 208 Conn. 38, 45–46, 544 A.2d 1179 (1988).

Although a defendant may plead guilty to a crime without distinguishing whether he was a principal or an accessory, once he has chosen to plead guilty as an

accessory and the court has accepted that choice by accepting that plea, he can be found guilty of only that crime and is entitled to a judgment, sentence and mittimus that reflects that crime. His decision to plead as an accessory has to be influenced by his belief that he will be found guilty as an accessory. See id., 46. Due process requires that the defendant know the specific charge to which he is pleading. A jury may be polled as to the basis of its verdict to determine whether the defendant was convicted as a principal or an accessory. See id., 47. If this is so, a defendant must be able to plead as an accessory or a principal.

We therefore conclude that the court should have granted the defendant's motion to correct a sentence made in an illegal manner, pursuant to Practice Book § 935. Having so concluded, we find it unnecessary, and the defendant agrees, to address the next three issues raised.

The final issue raised by the defendant is that the trial court improperly accepted his plea, and that his plea was not made knowingly, intelligently and voluntarily. Specifically, he claims that the trial court failed to explain properly the intent required for accessory liability, and that, because of the inherent inconsistency in the defendant's assertions, it was impossible for the trial court to have determined that the plea was made knowingly, intelligently and voluntarily.

" 'It is axiomatic that unless a plea of guilty is made knowingly and voluntarily, it has been obtained in violation of due process and is therefore voidable.' " *State* v. *Ramos,* 23 Conn. App. 1, 3, 579 A.2d 560 (1990). The defendant did not raise this claim by moving to withdraw his plea pursuant to Practice Book § 720,[5] but

_____

[5] Practice Book § 720 provides: "A defendant may withdraw his plea of guilty or nolo contendere as a matter of right until the plea has been accepted. After acceptance, the judicial authority shall allow the defend-

seeks review under *Evans-Golding. State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973); *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989). The defendant alleges that his claim goes to the constitutional validity of his plea. He alleges that his claim is of constitutional magnitude because it represents a violation of a fundamental right that clearly exists and clearly deprived him of a fair trial. "Under Practice Book §§ 720 and 721, a defendant may withdraw his guilty plea on the ground of a deficient plea canvass only by bringing the deficiency to the court's attention prior to the conclusion of the sentencing proceeding." *State* v. *Anderson,* 23 Conn. App. 564, 567, 583 A.2d 142 (1990), rev'd in part, 220 Conn. 400, 599 A.2d 738 (1991). Failure to raise a claim in a timely manner will usually preclude review of the plea. Id., 568.

In *State* v. *Golding,* supra, our Supreme Court reformulated the test of reviewability in *Evans.* The *Golding* court held that when a defendant fails to preserve his claim at trial he can prevail on that claim only if all of the following conditions are met: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." Id., 239–40. When any one of these conditions is not met, the defendant cannot prevail. Id., 240.

This court may review claims that implicate the knowing and voluntary nature of a plea under the exceptional circumstances doctrine of *State* v. *Evans,*

ant to withdraw his plea upon proof of one of the grounds in Sec. 721. A defendant may not withdraw his plea after the conclusion of the proceeding at which the sentence was imposed."

supra, 70. *State* v. *Coleman,* 17 Conn. App. 307, 311,
552 A.2d 442 (1989). In this case, a limited review is
necessary to determine whether the knowing and
voluntary nature of the defendant's plea was affected.
*State* v. *Wright,* supra, 286–87. Our examination of the
plea canvass reveals the following. While it is clear that
the defendant expressed some confusion when the can-
vassing began, it is also clear that the court responded
to the defendant's initial confusion by suggesting that
he withdraw the plea and go to trial. The defendant
requested that the plea hearing go forward. The rec-
ord shows that the court, after the defendant insisted
that he was pleading guilty as an accessory, fully
explained that if he were tried to a jury, he could be
convicted either as a principal or as an accessory, and
according to the defendant's version, he intentionally
aided the shooter, who shot the gun and killed the per-
son. The court explained: "If the facts come out that
you were acting with the mental state required for the
commission of an offense you aided another person in
conduct, which would be the manslaughter one, they
would find you guilty of manslaughter one. Even under
your version." After the defendant stated that he did
not understand and the court suggested that he go to
trial, the defendant, through counsel, persisted and
requested to continue with the plea hearing. Follow-
ing the state's recitation of the allegations, the court
inquired, "Now, you plead to a manslaughter charge,
but you're not saying that you did what [the state's
attorney] said you did?" The defendant replied: "Right,
exactly." The court stated: "You're pleading, saying,
'I wasn't the shooter. I was with the shooter as an
accessory.' Am I right?" To which the defendant
replied: "Yes, yes sir."

This review indicates that the plea was knowingly
and voluntarily entered. We conclude that neither the
confusion of the defendant, if any, nor the court's fail-

ure specifically to refer to the dual intent requirement on accessorial liability[6] affected the knowing and voluntary nature of his plea. Although he alleges that a constitutional right is claimed, the defendant has failed to demonstrate on appeal that his claim is truly of constitutional proportions. Therefore, we conclude that his claim is not reviewable under the *Evans-Golding* bypass doctrine.

The judgment is reversed in part and the case is remanded with direction to grant the defendant's motion to correct.[7] In all other respects the judgment is affirmed.

In this opinion the other judges concurred.

---

[6] Cf. *State* v. *Fudge,* 20 Conn. App. 665, 670, 569 A.2d 1145 (1990), and *State* v. *Foshay,* 12 Conn. App. 1, 23–24, 530 A.2d 611 (1987). Failure to instruct on the dual intent requirement on accessorial liability found not to be of constitutional proportion and thus not reviewable where neither an instruction was requested nor an exception taken.

[7] We note that the defendant did not request that his sentence be vacated and a new sentence imposed. He requested only that the judgment and the mittimus be corrected.