## STATE OF CONNECTICUT *v.* JUAN VELEZ
## (11326)

DALY, FOTI and LANDAU, Js.

Argued October 27, 1992—decision released January 12, 1993

*Paula Mangini Montonye,* assistant public defender, with whom, on the brief, was *Temmy Ann Pieszak,* assistant public defender, for the appellant (defendant).

*Margaret Gaffney Radionovas,* deputy assistant state's attorney, with whom, on the brief, was *Mark S. Solak,* state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of conviction, rendered by the court following his guilty pleas,[1] of criminal attempt to commit assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-59 (a) (1), failure to appear in the first degree in violation of General Statutes § 53a-172 (a), possession with intent to sell a narcotic substance by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), and possession of a sawed-off shotgun in violation of General Statutes § 53a-211.[2] The defendant claims that the trial court improperly (1) failed to comply with Practice Book § 711 by not advising him of the relationship between the events, as alleged, and the elements of the crimes to which he pleaded guilty, (2) accepted the defendant's pleas without ensuring that his counsel had advised him of that relationship between the facts and the law, also in violation of Practice Book § 711, and (3) accepted the

---

[1] The defendant's pleas of guilty to violation of General Statutes §§ 21a-278 (b) and 53a-211 were entered pursuant to *North Carolina* v. *Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). As a consequence of the defendant's pleas, and as part of the plea agreement, the state nolled charges of possession of a narcotic substance with intent to sell in violation of General Statutes § 21a-277 (a), attempted murder in violation of General Statutes §§ 53a-59 (a) (1) and 53a-49 (a) (2), and possession of a weapon in a motor vehicle in violation of General Statutes § 29-38.

[2] The defendant was sentenced to concurrent periods of incarceration for a total effective sentence of twelve years of imprisonment.

defendant's pleas without ensuring that they were entered knowingly, intelligently and voluntarily, thus violating his federal and state constitutional rights to due process. We affirm the judgment of the trial court.

The record discloses the following facts pertinent to this appeal. On June 3, 1988, the trial court conducted a plea canvass proceeding. As a preliminary matter, the court established that the defendant understood and spoke English and did not require the services of a Spanish interpreter.[3] The court clerk then read into the record the separate information for each of the four charges. After each charge was read, the defendant entered a plea of guilty. The defendant acknowledged that he understood that by pleading guilty he was waiving his right to remain silent, his right to a jury or court trial with the assistance of counsel, and his right to confront witnesses. The court then advised the defendant to listen carefully as the state's attorney recited the factual bases for the two charges against him to which he was pleading guilty under the *Alford* doctrine.[4] The state's attorney then read into the record, in the defendant's presence, the following descriptions of the factual basis for each offense: "In the first case, which is 8496, possession with intent to sell a narcotic substance, this is an incident that took place at the Windham Heights area in the town of Windham. On the 24th day of February, police officers were observing activity in the parking area at that—in a parking area at that location. An informant known to the police approached Mr. Velez and their understanding was that a drug transaction took place between the informant and Mr. Velez. The informant then went back to the police, provided them with the items that had been sold

---

[3] The defendant has not challenged this determination.

[4] Under the *Alford* doctrine, the defendant consents to sentencing as if he is guilty. He acknowledges only that the state has enough evidence to convict him without expressly acknowledging his guilt.

and, based on that information, the police then went and searched Mr. Velez and obtained from his person some seven bags of a substance which was later tested and found to be—contain heroin. When questioned by the police subsequent to his arrest, he indicated that he did in fact sell heroin to make money [and] that he was not addicted to heroin. Thus, the charge of possession with intent to sell a narcotic by a non-drug-dependent person.''

The state's attorney then recited the factual allegations relative to the charge of possession of a sawed-off shotgun: "[T]his is an incident that took place on the 11th day of March, 1988. Police officers again in the Windham Heights area were observing activity just as a matter of routine and they observed Mr. Velez and a companion in a vehicle parked outside of one of the residences. Their suspicion was drawn because Mr. Velez had previously been arrested by them on the charge that we've just—I've just represented to the court, and so they knew who he was and they were simply watching and they were watching the comings and goings from the two individuals from the vehicle to the building. On one occasion they observed Mr. Velez coming out of a building with an object under his coat or wrapped—a small long object, which he was observed placing in the trunk of the vehicle. This is a hatchback vehicle, so it's not really a trunk, but a hatchback of the vehicle, and then went back in and then the two individuals came out of the building and both got into the car. At that point the police radioed to another trooper who was on the highway to observe the vehicle and they wanted to ascertain the identity of the driver who was not Mr. Velez. The trooper watched the vehicle. The vehicle at that point exceeded the posted speed limit, at which point the trooper pulled the vehicle over for the purpose of issuing a summons for speeding. And in checking the identity of the driver,

found that his driver's operator's license was under suspension at that time. They also recognized that the parties in the car had previously been involved in possession of weapons and, so, based on this information, and based upon what they had seen, they arrested the driver. They opened—looked through and then opened the trunk of the vehicle and found the item that Mr. Velez had apparently carried into the car as being a sawed-off shotgun. In addition, another weapon was found in the motor vehicle, a revolver was found in the motor vehicle, which is attributable to the driver as opposed to Mr. Velez. Thus, they charged him with possession of a sawed-off shotgun in violation of the statute under those circumstances. Mr. Velez at that point, being questioned by the police, also admitted that he had carried the shotgun into the car and had put it into the trunk area."

After the defendant indicated that he had heard the state's version of the facts for these two charges, the court asked the defendant: "Since you are pleading guilty under the so-called *Alford* doctrine, I do not intend to ask you whether that actually happened; do you understand that?

"The Defendant: Yes, sir.

"The Court: Are you satisfied . . . that if there were a trial of this matter, the state would probably be able to prove, beyond a reasonable doubt, that on the 24th day of February, 1988, in the town of Windham, you had in your possession a quantity of a narcotic substance, that is, heroin, that you knew you had that substance in your possession, that you knew the same to be heroin, that you had it in your possession with the intent to sell, transfer, or distribute that substance to another person, and that at that time you were not a person dependent upon drugs. Are you satis-

fied that if there were a trial, the state would be able to prove those elements of this offense beyond a reasonable doubt?

"The Defendant: Yes, sir.

"The Court: Are you satisfied as well that if there were a trial of this matter, the state would be able to prove, beyond a reasonable doubt, that on the 11th day of March, 1988, you did, in the town of Windham, knowingly possess a sawed-off shotgun, that is, a Mossberg twelve gauge shotgun with a barrel less than eighteen inches in length; are you satisfied—

"The Defendant: Yes, sir.

"The Court: —that the state would be able to prove that beyond a reasonable doubt?

"The Defendant: Yes, sir.

"The Court: And are you satisfied as well that the state would be able to prove, beyond a reasonable doubt, that you were not licensed or otherwise permitted by state or federal law to possess, control or own that sawed-off shotgun?

"The Defendant: Yes, sir."

The court then explained to the defendant the maximum and minimum sentences specified in the statutes, and the defendant indicated that he understood this. The defendant further acknowledged that he was entering the pleas to take advantage of the plea agreement that had been made, which included a sentencing recommendation of twelve years, because he thought it was in his best interest to do so. The defendant also acknowledged that no threats or promises had been made to induce him to enter these two pleas, other than the terms of the plea agreement, which was placed on the record. The court then asked the defendant if he

had any questions and if he wanted further opportunity to speak with his attorney about these pleas. The defendant said, "No, sir."

The court then canvassed the defendant as to the other two charges in a similar fashion, instructing him to "listen carefully" to the state's allegations of the facts. The state's attorney then read the following: "In file number 8515, which is the next in line, failure to appear in the first degree, this incident took place in this court on the 15th day of April, 1988. At that time, Mr. Velez, having been charged with the crimes of possession of a narcotic substance with intent to sell in two counts, which are felonies, and also criminal attempt to commit murder and criminal attempt to commit assault in the first degree, which are also felonies, and I believe also at that time having been charged with weapons in a motor vehicle—I'm sorry, he was not charged—he was not charged with the assault charge at that time. He was charged with the narcotics charge at that time, both of which are felonies. So, being charged with felonies on that particular date, he was to appear in court on that date to answer to those charges and failed to— and willfully failed to do so in violation of the statute. With respect to the last file, file number 8511, to which he has pled guilty to criminal attempt to commit assault in the first degree, this is an incident that took place again at Windham Heights on the 13th day of April, 1988. On that occasion, Mr. Velez apparently had had a verbal argument with the victim. Words were exchanged between them prior to that particular time. Mr. Velez came back to the area, again engaged in a verbal argument with the victim, at which point Mr. Velez had in his possession a firearm, pointed the firearm in the direction of the [victim], who at that point took off and started running, and fired three rounds at him or at least toward him. The clear intent from the witnesses who observed this was that he was aim-

ing the weapon . . . at the victim as he was running. Three rounds were fired. One of the rounds entered the buttocks of the victim, causing a wound which was subsequently treated and taken care of. It's the state's position that in firing the gun at that point, he intended to do serious physical harm to the victim and thus the charge of attempted assault in the first degree with that particular firearm, although he's not charged under the firearm statute.''

After the defendant acknowledged that he had heard the facts recited by the state's attorney and that they were accurate, the court asked the defendant a series of questions:

''The Court: Is that what happened on these occasions?

''The Defendant: Yes, sir.

''The Court: You admit then that on the 15th day of April, 1988, that you were charged with a felony, that you had been released on bond, that knowing that you were required to appear in court you willfully failed to do that; is that right?

''The Defendant: Yes, sir.

''The Court: You knew you had to be here in this court in Putnam on the 15th of April?

''The Defendant: Yes, sir.

''The Court: And you were then released, even though you were charged with an offense which carried a penalty of more than a year?

''The Defendant: Yes, sir.

''The Court: Why didn't you come to court?

''The Defendant: I knew the state police was going to be here on that day waiting for me because I had shot somebody during that week, so I didn't come.

"The Court: So you didn't come to court because you knew you were going to be arrested if you came to court?

"The Defendant: Yes, sir.

"The Court: And that is the only reason you didn't come to court?

"The Defendant: Yes, sir.

"The Court: Nothing else prevented you from coming to court?

"The Defendant: No, sir.

"The Court: You make that plea then freely and voluntarily because you are guilty and for no other reason?

"The Defendant: Yes, sir.

"The Court: Now, do you admit that on the 13th day of April, in the town of Windham, you took steps to carry out your intent to cause serious physical injury to another person by means of a deadly weapon?

"The Defendant: Yes, sir.

"The Court: Was that deadly weapon a firearm?

"The Defendant: Yes, sir.

"The Court: And did you take that step by intentionally firing that pistol at that other person?

"The Defendant: Yes, sir.

"The Court: You did in fact shoot him?

"The Defendant: Yes, sir.

"The Court: You, therefore, admit that you caused a gunshot wound to him; is that right?

"The Defendant: Yes, sir.

"The Court: And you did that with the intent to cause serious physical injury to him; is that right?

"The Defendant: Yes, sir.

"The Court: And you did in fact cause such injury to him.

"The Defendant: Yes, sir.

"The Court: With a deadly weapon, a pistol?

"The Defendant: Yes, sir.

"The Court: Might even constitute the offense rather than just an attempt. In any event, what is charged is the attempt, and you admit that you attempted to do that; is that right?

"The Defendant: Yes, sir.

"The Court: And you admit that you had the required mental state for commission of that crime, the intention to cause serious physical injury?

"The Defendant: Yes, sir.

"The Court: And to commit a crime—

"The Defendant: Yes, sir.

"The Court: To do something wrong—

"The Defendant: Yes.

"The Court: In violation of the law.

"The Defendant: Yes."

The court then continued canvassing the pleas on these counts to determine that the defendant was making them freely and voluntarily. The defendant acknowledged that he had discussed both the meaning and the effect of his pleas with his attorney, and he answered negatively when the court asked if there was "anything at all you don't understand about the mean-

ing and effect of your pleas of guilty." The defendant affirmed that he was satisfied with the advice and assistance his attorney had given him, and had no questions for either the court or his attorney about his pleas. At no time did the defendant move to withdraw his pleas of guilty.

## I

The defendant's first two claims have as their basis an alleged violation of Practice Book § 711.[5] His challenges rest on a contention that the trial court failed to present him with an analysis correlating the facts recited by the state's attorney with the elements of the offenses, or failed to ensure that his attorney had offered him such a fact-law analysis. The defendant does not claim that the trial court improperly reviewed the elements of the crimes charged. Nor does he claim that the facts were improperly recited as alleged. Rather, the defendant seeks to persuade us that the plea canvassing procedure set forth in Practice Book § 711 includes the separate requirement of a mixed fact-law analysis by the trial court, a requirement he never claimed was necessary prior to the present appeal. As part of these claims, the defendant argues that while

---

[5] Practice Book § 711 provides: "The judicial authority shall not accept the plea without first addressing the defendant personally and determining that he fully understands:

"(1) The nature of the charge to which the plea is offered;

"(2) The mandatory minimum sentence, if any;

"(3) The fact that the statute for the particular offense does not permit the sentence to be suspended;

"(4) The maximum possible sentence on the charge, including, if there are several charges, the maximum sentence possible from consecutive sentences and including, when applicable, the fact that a different or additional punishment may be authorized by reason of a previous conviction; and

"(5) The fact that he has the right to plead not guilty or to persist in that plea if it has already been made, and the fact that he has the right to be tried by a jury or a judge and that at that trial he has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself."

residents of Connecticut are presumed to know the law of Connecticut, a nonresident, like himself, may require a discussion by the trial court relating the law and facts so that he might truly "be aware of how the alleged events correspond to the elements of the charges."

" 'Under Practice Book §§ 720 and 721, a defendant may withdraw his guilty plea on the ground of a deficient plea canvass only by bringing the deficiency to the court's attention prior to the conclusion of the sentencing proceeding.' *State* v. *Anderson,* 23 Conn. App. 564, 567, 583 A.2d 142 (1990), rev'd in part, 220 Conn. 400, 599 A.2d 738 (1991). Failure to raise a claim in a timely manner will usually preclude review of the plea. Id., 568." *State* v. *Gamble,* 27 Conn. App. 1, 13, 604 A.2d 366, cert. denied, 222 Conn. 901, 606 A.2d 1329 (1992).

The defendant did not raise these claims by moving to withdraw his pleas pursuant to Practice Book § 720,[6] but instead seeks *Evans-Golding* review. "In *State* v. *Golding,* [213 Conn. 233, 567 A.2d 823 (1989)] our Supreme Court reformulated the test of reviewability in [*State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973)]. The *Golding* court held that when a defendant fails to preserve his claim at trial he can prevail on that claim only if all of the following conditions are met: '(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed

---

[6] Practice Book § 720 provides: "A defendant may withdraw his plea of guilty or nolo contendre as a matter of right until the plea has been accepted. After acceptance, the judicial authority shall allow the defendant to withdraw his plea upon proof of one of the grounds in Sec. 721. A defendant may not withdraw his plea after the conclusion of the proceeding at which the sentence was imposed."

to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt.' Id., 239–40. When any one of these conditions is not met, the defendant cannot prevail. Id., 240." *State* v. *Gamble,* supra, 13. We conclude here that the defendant has not satisfied the second prong of the *Evans-Golding* test, because he has failed to raise a claim of constitutional magnitude alleging the violation of a fundamental right.

"The fact that an allegation of noncompliance with [a rule of practice] may sometimes have constitutional dimensions does not . . . establish the existence of such a constitutional nexus in every case." *State* v. *Jarrett,* 218 Conn. 766, 776, 591 A.2d 1225 (1991). Precise compliance with the provisions of Practice Book §§ 711 and 712, which govern the canvassing of a defendant's guilty pleas, is not constitutionally required. *State* v. *Badgett,* 200 Conn. 412, 418, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986). Our Supreme Court has indicated that "[w]here there has been a substantial compliance with [§ 711], such that none of the defendant's constitutionally protected rights has been infringed upon, the failure to comply with each and every requirement of [§ 711] does not automatically require the vacating of the defendant's plea. . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Lopez,* 197 Conn. 337, 346, 497 A.2d 390 (1985). Moreover, due process does not mandate a factual basis inquiry. *Paulsen* v. *Manson,* 203 Conn. 484, 491, 525 A.2d 1315 (1987). The *Paulsen* court quoted approvingly *Willbright* v. *Smith,* 745 F.2d 779, 780 (2d Cir. 1984), in which the court stated that "[t]he voluntariness of a plea of guilty . . . should be determined by considering all of the relevant circumstances." While the trial court's scrupulous compliance with the provisions of Practice Book § 711 may be mandatory when challenged on direct appeal, that may not

be the case when claimed under the *Evans-Golding* bypass doctrine, where the claim of noncompliance must be of constitutional magnitude.

The defendant's first two claims are really a request that we read into the text of Practice Book § 711 the constitutional requirement of a separate law-fact analysis by the trial court. We decline to do so. Although he alleges the existence of a constitutional violation because the trial court did not provide such an analysis, he has not demonstrated that such a constitutional right truly exists. Because the defendant's claimed violation of Practice Book § 711 is not of constitutional magnitude, we decline to review it under the *Evans-Golding* bypass doctrine.

"As a general rule, we will not overturn the judgment of a trial court for alleged deviations from the rules of the Practice Book in the absence of a contemporaneous objection distinctly raising that claim at trial." *State* v. *Jarrett,* supra, 775. "To the extent that the defendant's [first two claims rest] on an alleged violation of the provision of the Practice Book, [they] cannot be sustained because this contention was not clearly articulated to the trial court." Id., 776.

## II

The defendant's third claim, a constitutional challenge to his guilty pleas, differs from his two claims under the rules of practice. Here, he alleges that the pleas were made in violation of the due process clause of the fifth and fourteenth amendments to the United States constitution, and article first, § 8, of the Connecticut constitution.[7] He bases this claim on the United

---

[7] The defendant offers no separate analysis of the state constitutional claim because, he states, "the analysis is the same. If [the defendant's] pleas are not constitutionally valid under the United States constitution, they cannot be valid under the Connecticut constitution. Therefore, the validity claim goes to both."

States Supreme Court's decision in *Boykin* v. *Alabama,* 395 U.S. 238, 243–44, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). There, the court held that to comport with due process, a defendant's plea of guilty must be entered knowingly and voluntarily.

The defendant does not claim that he was not made aware of the events alleged or that the trial court did not fully review with him all the elements of the crimes with which he was charged. Rather, the defendant again claims that the trial court did not ensure that he fully understood the elements of the charges against him "in relation to" the underlying facts. He argues that when the trial court canvassed him, the court "simply repeated the elements of the crimes charged without simplifying them for a lay person" and unconstitutionally failed to "correlate the factual scenarios for each charge with the specific elements that the state had to prove for a conviction on each charge."

This constitutional claim, like the rules of practice claims, was not properly preserved. In *State* v. *Childree,* 189 Conn. 114, 119, 454 A.2d 1274 (1983), however, our Supreme Court indicated that a guilty plea not knowingly and voluntarily made involves the violation of a fundamental constitutional right and, therefore, may be considered for the first time on appeal. In this case, however, the defendant also asks us to determine whether, as part of the fundamental right that a guilty plea be knowingly and voluntarily made, the trial court must provide the defendant with a special analysis "correlating" the facts and the law. We decline to review this aspect of his claim.

" '[U]nless a plea of guilty is made knowingly and voluntarily, it has been obtained in violation of due process and is therefore voidable.' " *State* v. *Ramos,* 23 Conn. App. 1, 3, 579 A.2d 560 (1990). The defendant points to no Connecticut cases specifically holding that

a plea is deemed to have been entered knowingly and voluntarily, as a matter of constitutional law, only if, as part of the canvass, the court "correlates" the facts and the law. The defendant refers only to *McCarthy* v. *United States,* 394 U.S. 459, 466, 89 S. Ct. 1166, 22 L. Ed. 2d 418 (1969), and three Connecticut cases: *State* v. *Collins,* 207 Conn. 590, 542 A.2d 1131 (1988); *State* v. *Marra,* 174 Conn. 338, 387 A.2d 550 (1978); and *Consiglio* v. *Warden,* 160 Conn. 151, 276 A.2d 773 (1970); which incorporate language from *McCarthy,* as support for his argument. We are unpersuaded.

In *McCarthy,* the United States Supreme Court stated that in order for a plea of guilty to be constitutionally valid, it must be "equally voluntary and knowing . . . it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." *McCarthy* v. *United States,* supra; see *State* v. *Collins,* supra, 598. Our Supreme Court has frequently quoted this language from *McCarthy* to emphasize the voluntary and knowing requirements of a guilty plea. See, e.g., *State* v. *Childree,* supra, 122–23; *State* v. *Torres,* 182 Conn. 176, 184, 438 A.2d 46 (1980). We have found no Connecticut case, however, in which this language from *McCarthy* was interpreted to require a special analysis on the part of the trial court explicitly linking the facts alleged with the elements of the crimes charged in order to satisfy the constitutional requirement that a plea be knowingly and voluntarily made.[8]

---

[8] In *Myers* v. *Manson,* 192 Conn. 383, 390, 472 A.2d 759 (1984), where the defendant claimed that his plea was invalid because he was not competent at the time he entered it, the court cited this language from *McCarthy* to indicate that "if the defendant does not possess an understanding of the law in relation to the facts, can not choose among the alternatives, or does not have sufficient awareness of the relevant circumstances and likely consequences, then the defendant can not be competent to plead. . . . [T]he trial court's acceptance of the plea after a thorough inquiry . . . implies that the plaintiff was competent to enter that plea." (Citations omit-

The three Connecticut cases cited by the defendant fail likewise to demonstrate that he has a fundamental right to such an analysis. In *Consiglio* v. *Warden,* supra, the court did not cite the language from *McCarthy* on which the defendant relies. In *State* v. *Marra,* supra, the court cited the language, but did not rely on it. There, the validity of the defendant's plea was undermined, not because the trial court had failed to correlate the facts with the law, but because the recitation of facts by the state's attorney was insufficient to support the defendant's guilty plea. Significantly, our Supreme Court later overruled *Marra* to the extent that it had held that a plea unsupported by a factual basis is constitutionally defective. See *Paulsen* v. *Manson,* supra. In *State* v. *Collins,* supra, 596, our Supreme Court stated that "[t]he *Boykin* constitutional essentials for the acceptance of a plea of guilty are included in our rules and are reflected in Practice Book § 711." Earlier in this opinion, we declined to read into § 711 the separate requirement of a law-fact analysis by the trial court.

The defendant has failed to demonstrate that his guilty pleas do not conform to the requirements of Practice Book § 711 and the standards set forth in *Boykin* v. *Alabama,* supra. This portion of the defendant's claim therefore fails to satisfy the conditions necessary to permit our full review under *Evans-Golding.*

Our limited review of the defendant's pleas under the exceptional circumstances doctrine of *State* v. *Evans,* supra, 70, and *State* v. *Gamble,* supra, 13–14, reveals

ted.) In *Myers,* the court linked the defendant's possession of "an understanding of the law in relation to the facts" to his competence to enter a plea. *Myers* indicates that a trial court, by accepting a plea after a thorough canvass in accordance with the requirements of the rules of practice, implicitly determines that the defendant possessed sufficient understanding of the law in relation to the facts to voluntarily and knowingly enter the plea.

that the pleas were knowingly and voluntarily entered. We reiterate that the defendant makes no claim that any essential element of any offense was omitted by the trial court, or that any necessary fact was omitted by the state's attorney during the canvass. We have examined the entire transcript of the plea canvass proceeding and it is difficult to imagine how much clearer the trial court could have made its discussion of the pleas. The record is devoid of any indication that the defendant did not understand the nature of the proceedings, nor is there any suggestion that he was incompetent to enter the pleas. The record shows no due process violations under the fifth and fourteenth amendments to the United States constitution.[9] The defendant has been unable to demonstrate the violation of a fundamental constitutional right. We conclude, therefore, that his third claim must fail.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[9] We decline to address separately the defendant's state constitutional claim; see footnote 7, supra.