STATE OF CONNECTICUT *v.* KAROL DOMIAN
(13080)

O'CONNELL, FREEDMAN and SCHALLER, Js.

Argued June 9—decision released August 30, 1994

*Deborah DelPrete Sullivan,* assistant public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.,* assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Joan Alexander,* assistant state's attorney, for the appellee (state).

FREEDMAN, J. The defendant appeals from the judgments of conviction rendered following his *Alford*[1] plea to arson in the first degree, burglary in the third degree, and larceny in the second degree.[2] The defendant claims that (1) his guilty plea was not knowingly and voluntarily made, (2) the trial court improperly conducted the canvass of his guilty plea in violation of constitutional requirements and the rules of practice, and (3) it was factually impossible for the defendant to commit arson in the first degree as defined in General Statutes § 53a-111. We affirm the judgments of the trial court.

The following facts are necessary to the disposition of this appeal. On November 9, 1992, the defendant was arrested and charged with arson in the third degree

---

[1] *North Carolina* v. *Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[2] Although the defendant's brief on appeal indicates that only the plea to arson in the first degree was an *Alford* plea, both the state's brief and the plea canvass transcript indicate that the entire plea was entered pursuant to the *Alford* doctrine.

in violation of General Statutes § 53a-113,[3] and false statement in violation of General Statutes § 53a-157.[4] The arson charge arose from a fire on February 28, 1992, at 132 Gold Street in New Britain. The subject premises, an abandoned three-family dwelling, had been an arson target in 1991. As of February 28, 1992, the building was boarded up and scheduled for demolition. On November 9, 1992, in an unrelated matter, the defendant was also charged with conspiracy to commit burglary in the third degree in violation of General Statutes §§ 53a-48[5] and 53a-103.[6] On December 1, 1992, the defendant was arrested in another unrelated matter and charged with burglary in the third degree in violation of General Statutes § 53a-103, lar-

---

[3] General Statutes § 53a-113 provides: "ARSON IN THE THIRD DEGREE: CLASS C FELONY. (a) A person is guilty of arson in the third degree when he recklessly causes destruction or damage to a building, as defined in section 53a-100, of his own or another by intentionally starting a fire or causing an explosion.

"(b) Arson in the third degree is a class C felony."

[4] General Statutes § 53a-157 provides: "FALSE STATEMENT: CLASS A MISDEMEANOR. (a) A person is guilty of false statement when he intentionally makes a false written statement under oath or pursuant to a form bearing notice, authorized by law, to the effect that false statements made therein are punishable, which he does not believe to be true and which statement is intended to mislead a public servant in the performance of his official function.

"(b) False statement is a class A misdemeanor."

[5] General Statutes § 53a-48 provides: "CONSPIRACY. RENUNCIATION. (a) A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy.

"(b) It shall be a defense to a charge of conspiracy that the actor, after conspiring to commit a crime, thwarted the success of the conspiracy, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose."

[6] General Statutes § 53a-103 provides: "BURGLARY IN THE THIRD DEGREE: CLASS D FELONY. (a) A person is guilty of burglary in the third degree when he enters or remains unlawfully in a building with intent to commit a crime therein.

"(b) Burglary in the third degree is a class D felony."

ceny in the second degree in violation of General Statutes § 53a-123,[7] and conspiracy to commit larceny in the second degree in violation of General Statutes §§ 53a-48 and 53a-123. On March 9, 1993, the state filed a substitute information, raising the charge of arson in the third degree to arson in the first degree in violation of § 53a-111.[8]

On May 13, 1993, the defendant pleaded guilty, pursuant to *Alford*, to arson in the first degree, burglary in the third degree and larceny in the second degree. The state entered a nolle prosequi of the remaining charges. On September 14, 1993, following a presentence investigation, the court, *Damiani, J.*, sentenced the defendant to concurrent sentences of ten years on the arson charge, and five years each on the burglary and larceny charges.

I

The defendant first claims on appeal that his plea was not knowingly and voluntarily made and, therefore, he should be allowed to withdraw his guilty plea and to proceed to trial. The defendant provides two reasons why his plea was not knowingly and voluntarily made: (1) the failure of the court to inform him of the mandatory minimum sentence for arson in the first degree, and (2) the inadequate factual basis for the plea to arson in the first degree.[9]

---

[7] General Statutes § 53a-123 provides in relevant part: "(a) A person is guilty of larceny in the second degree when he commits larceny as defined in section 53a-119 and . . . (2) the value of the property or service exceeds five thousand dollars . . . .

"(c) Larceny in the second degree in a class C felony."

[8] General Statutes § 53a-111 provides in relevant part: "(a) A person is guilty of arson in the first degree when, with intent to destroy or damage a building, as defined in section 53a-100, he starts a fire or causes an explosion, and . . . (4) at the scene of such fire or explosion a peace officer or firefighter is subjected to a substantial risk of bodily injury.

"(b) Arson in the first degree is a class A felony."

[9] The defendant also argues that the court misinformed him that burglary in the third degree was a class B felony, but he does not argue that

The defendant concedes that he failed to preserve this issue for appeal by moving to withdraw his plea prior to the conclusion of sentencing. The defendant seeks review pursuant to the *Evans-Golding* constitutional bypass doctrine. *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989); *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973).

" 'In *State* v. *Golding,* [supra, 213 Conn. 233] our Supreme Court reformulated the test of reviewability in [*State* v. *Evans,* supra, 165 Conn. 61]. The *Golding* court held that when a defendant fails to preserve his claim at trial he can prevail on that claim only if all of the following conditions are met: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt.". . .' " (Citations omitted.) *State* v. *Velez,* 30 Conn. App. 9, 20–21, 618 A.2d 1362, cert. denied, 225 Conn. 907, 621 A.2d 289 (1993); *State* v. *Gamble,* 27 Conn. App. 1, 13, 604 A.2d 366, cert. denied, 222 Conn. 901, 606 A.2d 1329 (1992); see also *State* v. *Walker,* 33 Conn. App. 763, 768–69, 638 A.2d 1084 (1994).

The first and second prongs of the *Golding* test dictate whether an issue will be reviewed, and the third and fourth prongs constitute review of the issue on its

this error substantially impacted on the knowing, intelligent, and voluntary nature of his plea. Because the issue was not briefed, and was not raised in oral argument, we deem it to have been abandoned. "Assignments of error are . . . deemed to be abandoned where they are merely mentioned in the brief without any discussion of the particular issues mentioned." (Internal quotation marks omitted.) *Varley* v. *Varley,* 189 Conn. 490, 504, 457 A.2d 1065 (1983).

merits. *State* v. *Avila,* 223 Conn. 595, 602, 613 A.2d 731 (1992); *Wilson* v. *Cohen,* 222 Conn. 591, 603, 610 A.2d 1177 (1992). The first prong of *Golding* is satisfied in this case, as the record is clearly adequate to review the alleged claim of error. "In determining whether the second *Golding* requirement is satisfied, we do not evaluate the merits of the claim, except to determine whether the claim is frivolous." *Wilson* v. *Cohen,* supra, 603. The second prong merely asks if the defendant's claim is in fact constitutional, and not a " 'patently unconstitutional claim' [or] one 'masquerading' as a constitutional claim." Id. On its face, the claim that a plea was not knowingly and voluntarily made, is precisely the kind of claim appropriate for constitutional bypass review pursuant to *Evans. State* v. *Childree,* 189 Conn. 114, 119, 454 A.2d 1274 (1983).

"[A] defendant who pleads guilty waives certain constitutional rights, including his privilege against self-incrimination, his right to trial by jury, and his right to confront his accusers." *State* v. *Spence,* 29 Conn. App. 359, 366, 614 A.2d 864 (1992), citing *McCarthy* v. *United States,* 394 U.S. 459, 466, 89 S. Ct. 1166, 22 L. Ed. 2d 418 (1969). "A waiver is an *intentional* relinquishment or abandonment of a known right or privilege." (Emphasis added.) *Paulsen* v. *Manson,* 203 Conn. 484, 489, 525 A.2d 1315 (1987), citing *Johnson* v. *Zerbst,* 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938). Without having been knowingly and voluntarily made, therefore, a waiver should not be given effect. We cannot presume waiver from a silent record. *State* v. *Nelson,* 221 Conn. 635, 640, 605 A.2d 1381 (1992), citing *Boykin* v. *Alabama,* 395 U.S. 238, 243–44, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). Thus, the record must disclose that a plea of guilty was made knowingly and voluntarily; otherwise, that plea has been obtained in violation of due process and is voidable. *State* v. *Spence,* supra, 365–66. We conclude that the defendant's claim

that his plea violates due process because it was not knowingly and voluntarily made satisfies the second prong of *Evans-Golding.*

We proceed to the third prong of the constitutional bypass doctrine of *Evans-Golding* in order to determine whether "the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial." *State* v. *Golding,* supra, 213 Conn. 239–40. The questions we must resolve here are whether (1) the failure of the trial court to advise the defendant of the ten year mandatory minimum sentence for arson in the first degree or (2) the alleged absence of a factual basis preclude a finding that the defendant's plea was knowingly and voluntarily made.

A

The first factor that the defendant claims interfered with the knowing and voluntary nature of his plea was the failure of the trial court to inform him of the ten year mandatory minimum sentence for arson in the first degree.[10] "A determination as to whether a plea has been knowingly and voluntarily entered entails an examination of all of the relevant circumstances." *State* v. *Wright,* 207 Conn. 276, 287, 542 A.2d 299 (1988). From such examination we conclude that we need not determine whether an actual constitutional error existed because, even if a constitutional violation did occur, it did not clearly deprive the defendant of a fair trial under the third prong of *Golding.*[11]

---

[10] General Statutes § 53a-35a provides in relevant part: "For any felony committed on or after July 1, 1981, the sentence of imprisonment shall be a definite sentence and the term shall be fixed by the court as follows . . . (3) for a class A felony other than murder, a term not less than ten years nor more than twenty-five years . . . ."

[11] In *State* v. *Collins,* 207 Conn. 590, 542 A.2d 1131 (1988), our Supreme Court reviewed the failure of the trial court to advise the defendant of a mandatory minimum sentence under what is now referred to as the third prong of *Golding.* The *Collins* court held that "because the defendant does

During the plea canvass in this case, the trial court first ascertained that the defendant was not under the influence of drugs, alcohol or medication, and that the defendant had had enough time to talk to his attorney about the case and the decision to plead guilty. The court next informed the defendant of the elements of each of the three charges to which he was pleading guilty, and of the maximum sentence that could be imposed for each charge. The court then enumerated the rights that the defendant was giving up by his decision to plead guilty. After ensuring that no one had forced or threatened the defendant to plead guilty, the trial court told the defendant that the state would be "recommending substantial incarceration" and that the court was planning to impose a sentence of ten years. The trial court explained to the defendant: "[Y]our lawyer will have the right to argue for less than [ten years], but I've told him not to be optimistic; it would take a miracle for me to give you less than ten years."[12] After the defendant consistently acknowledged that he understood what the court planned to do, the state's attor-

not claim that the total effective seventeen year sentence imposed is any different from his plea bargained agreement" there was no actual constitutional violation in the failure to inform the defendant of the mandatory minimum sentence. Id., 596. Relying on *Collins* we have held that when a criminal defendant "received the sentence he bargained for" the failure of the trial court to inform the defendant of the mandatory minimum "does not affect a determination that the plea was knowingly and voluntarily made." *State* v. *Brown,* 19 Conn. App. 640, 643, 563 A.2d 1379, cert. denied, 212 Conn. 821, 565 A.2d 540 (1989); see also *State* v. *Ramos,* 23 Conn. App. 1, 8, 579 A.2d 560 (1990); *State* v. *Coleman,* 17 Conn. App. 307, 312, 552 A.2d 442 (1989). These cases, however, do not address the claim raised by the defendant in this case. Here, the defendant claims that he plea bargained for the right to argue for a sentence that was lower than the mandatory minimum, and that he did not necessarily "receive the sentence he bargained for."

[12] The exchange between the trial court and the defendant proceeded as follows:

"The Court: Now as I understand it the state's going to be recommending substantial incarceration for you. I've indicated to your lawyer and to

ney described the allegations supporting the charges. Then after asking the defendant, the defendant's attorney, the state's attorney, and the defendant's mother if there were any questions or problems, the trial court accepted the defendant's plea as knowing and voluntary, and found the plea to be supported by a factual basis.

We conclude that the trial court's failure to inform the defendant of the mandatory minimum does not render the plea unknowing or involuntary. In light of the detailed explanation of the sentence the trial court planned to impose,[13] we cannot reasonably find that the defendant had any realistic expectation of getting less than a ten year sentence, despite the bargained for opportunity to argue for less than ten years. We are unpersuaded that the defendant would have changed his plea if informed of the mandatory minimum sentence of ten years, part of which could have been suspended. See *State* v. *Hanson,* 210 Conn. 519, 525, 556 A.2d 1007 (1989); *State* v. *O'Neill,* 200 Conn. 268, 289, 511 A.2d 321 (1986).

Although the opportunity to argue for less than ten years may have been a factor in the defendant's deci-

---

the state that I'd be imposing a sentence of ten years. Do you understand that, sir?

"The Defendant: Yes, sir.

"The Court: Now your lawyer will have the right to argue for less than that, but I've told him not to be optimistic; it would take a miracle for me to give you less than ten years. You understand that, sir?

"The Defendant: Yes, I do, sir.

"The Court: Once I accept your plea today you'll come back for sentencing . . . . On June 18 you'll be here for sentencing. You can't withdraw your plea except with my permission. And the only way that would happen would be if I were to impose more than ten years. You understand that?

"The Defendant: Yes, I do, sir.

"The Court: If I gave you ten years you're locked in, you can't take your plea back. You understand that?

"The Defendant: Yes, I do, sir."

[13] See footnote 12.

sion to accept the plea bargain, a "less than perfect understanding of all aspects of his situation does not 'inevitably render his guilty plea "unknowing" and therefore involuntary . . . .' " *State* v. *Coleman,* 17 Conn. App. 307, 312, 552 A.2d 442 (1989), quoting, *D'Amico* v. *Manson,* 193 Conn. 144, 154, 476 A.2d 543 (1984). "Many factors may have been considered by the defendant and his attorney in determining whether to plead guilty to the charges. No doubt of great significance was the strength of the admissible evidence, the defendant's maximum exposure if convicted, and his possible release date if imprisoned." *State* v. *Collins,* 207 Conn. 590, 596, 542 A.2d 1131 (1988). Without a realistic basis for believing that he could conceivably get a sentence of less than ten years at the time his plea was accepted, we cannot find that the defendant's guilty plea was obtained in violation of due process. Under these circumstances, the failure of the trial court to inform the defendant of the mandatory minimum sentence for arson in the first degree did not deprive the defendant of his right to a fair trial and cannot lead to reversal under the third prong of *Golding.*

B

The second factor that the defendant claims interfered with the knowing and voluntary nature of his plea was the factual impossibility of his conduct constituting the crime of arson in the first degree. The defendant argues that the abandoned dwelling that he is charged with setting on fire was not a building pursuant to the definition of "building" in General Statutes § 53a-100. The defendant's claim, therefore, is that it was impossible for the court to find a proper factual basis for arson in the first degree, which requires that a person "with intent to destroy or damage a building,

as defined in section 53a-100 . . . starts a fire or causes an explosion . . . ." General Statutes § 53a-111.[14]

We are not persuaded by the defendant's very creative argument that an abandoned building is not a building. General Statutes § 53a-100 defines "building" in part as follows: "[I]n addition to its ordinary meaning, [a building] includes any watercraft, aircraft, trailer, sleeping car, railroad car or other structure or vehicle or any building with a valid certificate of occupancy. . . ."

If a statute is clear and unambiguous, there is no room for statutory construction. *University of Connecticut* v. *Freedom of Information Commission,* 217 Conn. 322, 328, 585 A.2d 690 (1991); *Wright* v. *Commissioner of Correction,* 216 Conn. 220, 225, 578 A.2d 1071 (1990). General Statutes § 1-1 (a) provides that in construing statutes "words and phrases shall be construed according to the commonly approved usage of the language." On its face, § 53a-100 defines building to include anything within the "ordinary meaning" of that word, as well as anything specifically enumerated in the statute or any "other structures."

It is appropriate for us to look at dictionary definitions in order to clarify the ordinary meaning of various terms. *AirKaman, Inc.* v. *Groppo,* 221 Conn. 751, 756–57, 607 A.2d 410 (1992); *Young* v. *Marx,* 24 Conn. App. 81, 84, 585 A.2d 1253 (1991). Building has been defined as a "[s]tructure designed for habitation, shelter, storage, trade, manufacture, religion, business, education, and the like. A structure or edifice inclosing a space within its walls, and usually, but not necessarily, covered with a roof." Black's Law Dictionary (6th Ed. 1990). Building has also been defined as "a usu[ally] roofed and walled structure built for perma-

---

[14] See footnote 8.

nent use (as for a dwelling)." Merriam-Webster's Collegiate Dictionary (10th Ed. 1993). Structure has been defined as "[a]ny construction, or any production or piece of work artificially built up or composed of parts joined together in some definite manner. That which is built or constructed . . . ." Black's Law Dictionary (6th Ed. 1990). A structure has also been defined as "something (as a building) that is constructed." Merriam-Webster's Collegiate Dictionary (10th Ed. 1993).

In this case, the defendant is charged with burning an abandoned three-story dwelling. Neither common sense, nor the previous definitions, suggests that current use of a structure is necessary to make a structure fit within the ordinary meaning of building. Nor do these definitions suggest that once a fire has taken place in a building it ceases to be a building, or that once scheduled for demolition a building is no longer a building. We conclude that the ordinary meaning of building clearly includes the structure that the defendant pleaded guilty to burning, even though it was the previous target of arson and was scheduled for demolition.[15]

In addition, we construe statutes with the assumption that the legislature is presumed to be cognizant of existing statutes, and to enact new statutes in an attempt to create a consistent body of law. *Zachs* v. *Groppo*, 207 Conn. 683, 696, 542 A.2d 1145 (1988). We should "presume that the legislature had a purpose for each sentence, clause, or phrase in a legislative enact-

---

[15] The Appellate Division of the New York Supreme Court has determined that under New York Penal Law § 150.00, which is substantially similar to our § 53a-100, an empty, vandalized or abandoned building is still a building under the ordinary meaning of that word. That court noted that under an alternative ruling, "it would not be a crime to burn down large sections of our city." *People* v. *Richberg*, 56 App. Div. 2d 279, 281, 392 N.Y.S.2d 16 (1977).

ment, and that it did not intend to enact meaningless provisions." *Turner* v. *Turner,* 219 Conn. 703, 713, 595 A.2d 297 (1991).

The definition of building in General Statutes § 53a-100 also applies to the burglary and criminal trespass statutes, General Statutes §§ 53a-101 through 53a-110. General Statutes § 53a-104 provides: "It shall be an affirmative defense to prosecution for burglary that the building was abandoned." Section 53a-110 provides in part: "It shall be an affirmative defense to prosecution for criminal trespass that . . . the building involved in the offense was abandoned . . . ." If we accept the defendant's argument that an abandoned building is not a building, these affirmative defenses to burglary and criminal trespass would be rendered meaningless and unnecessary.

Because the defendant's argument that an abandoned building is not a building is unpersuasive, we conclude that it was not factually impossible for the defendant to commit arson in the first degree. Therefore, the alleged constitutional violation does not clearly exist, and this claim cannot lead to reversal under the third prong of *Golding.*

## II

The defendant also claims on appeal that the trial court improperly conducted its canvass of the defendant's guilty plea in violation of constitutional requirements and the rules of practice by (1) failing to inform the defendant of the mandatory minimum sentence for arson in the first degree, and (2) not establishing a factual basis for the guilty plea to arson. The defendant also raises, as an independent issue, the claim that it was factually impossible to find him guilty of arson in the first degree. The defendant concedes that these claims were not properly preserved at trial, but requests review of these claims as plain error or under

the *Evans-Golding* constitutional bypass doctrine. Our conclusion that the defendant's plea was knowingly and voluntarily made is dispositive of both of these issues.

We first address the defendant's claim that these errors are entitled to review as plain error. Plain error review "is reserved for truly extraordinary situations where the existence of error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Wright,* supra, 207 Conn. 288–89. "Where a trial court's action does not result in any manifest injustice, a defendant's claim under the plain error doctrine does not warrant review." Id., 288.

In reviewing the claim that the defendant's plea was not entered knowingly and voluntarily we have concluded that (1) the defendant was not prejudiced by the trial court's failure to instruct him of the mandatory minimum sentence for arson in the first degree, and (2) there was a factual basis for the defendant's guilty plea to arson in the first degree. In light of these conclusions that there has been no manifest injustice or obvious error, plain error review is inappropriate. See Practice Book § 4185.

These conclusions, which we reached pursuant to our analysis under *Evans-Golding,* also preclude any need for further consideration of the defendant's claims under the constitutional bypass doctrine. The defendant failed to show that he was clearly deprived of a fair trial by the failure of the trial court to inform him of the mandatory minimum sentence for arson in the first degree. It does not matter, therefore, whether the defendant is claiming a violation of due process or a violation of Practice Book § 711.[16] Whatever the source

---

[16] "[Practice Book] Sec. 711. [PLEA OF GUILTY OR NOLO CONTENDERE] [——ACCEPTANCE]—— ——ADVICE TO DEFENDANT

"The judicial authority shall not accept the plea without first addressing

of the defendant's claim, because he was not prejudiced, he is not entitled to reversal under *Evans-Golding.*

Because we found unpersuasive the defendant's argument that an abandoned building is not a building, we similarly find that the defendant has failed, not only to establish a constitutional violation, but also to establish a violation of Practice Book § 713.[17] Without establishing that any violation "actually exists," the defendant is not entitled to reversal under *Evans-Golding,* no matter how many ways the claim is raised.

The judgment is affirmed.

In this opinion the other judges concurred.

the defendant personally and determining that he fully understands:

"(1) The nature of the charge to which the plea is offered;

"(2) The mandatory minimum sentence, if any;

"(3) The fact that the statute for the particular offense does not permit the sentence to be suspended;

"(4) The maximum possible sentence on the charge, including, if there are several charges, the maximum sentence possible from consecutive sentences and including, when applicable, the fact that a different or additional punishment may be authorized by reason of a previous conviction; and

"(5) The fact that he has the right to plead not guilty or to persist in that plea if it has already been made, and the fact that he has the right to be tried by a jury or a judge and that at that trial he has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself."

[17] Practice Book § 713 provides: "The judicial authority shall not accept a plea of guilty unless he is satisfied that there is a factual basis for the plea."