******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* DAVID D. ROBERTS
## (AC 45801)

Alvord, Suarez and Westbrook, Js.

*Syllabus*

Convicted, on a plea of guilty, of the crimes of reckless endangerment in the second degree, threatening in the second degree, and intimidation based on bigotry or bias in the third degree, the defendant appealed to this court. His conviction arose out of an incident in which he aimed a shotgun at individuals renting his neighbor's property, called them racial slurs and told them to get out. The defendant was charged in a second docket with, inter alia, intimidation based on bigotry or bias in the third degree for his actions in calling his neighbor and leaving a voicemail message that intimated future violence if the neighbor again rented the residence to people of color. He elected to enter a plea of guilty to reckless endangerment and threatening in the first docket and intimidation based on bigotry or bias in the second docket. At his plea hearing, the trial court expressed doubt as to the sufficiency of the factual basis for applying the charge of intimidation based on bigotry or bias in the second docket. The state, with the agreement of defense counsel, added the intimidation charge to the first docket, and the defendant was put to plea only in the first docket. The court canvassed the defendant and accepted his guilty plea. The court thereafter denied the defendant's motion to withdraw his plea and rendered a judgment of guilty. *Held*:

1. The trial court correctly concluded that the plea canvass was sufficient; although the court did not restate each of the three constitutional rights delineated in *Boykin* v. *Alabama* (395 U.S. 238), namely, the privilege against self-incrimination, the right to a jury trial, and the right to confront one's accusers, the defendant was cognizant of those rights prior to entering his guilty plea because he affirmed during the plea canvass that his attorney had fully explained the constitutional rights he was waiving and, thus, his plea was knowingly, voluntarily, and intelligently made.

2. The defendant could not prevail on his claim that, prior to ruling on his motion to withdraw his plea, the trial court improperly failed to hold an evidentiary hearing sua sponte on his ineffective assistance of counsel claim; the defendant failed to meet his burden of showing a plausible reason for the withdrawal of his plea sufficient to justify an evidentiary hearing, as the record of the plea proceeding demonstrated that the defendant had previously been presented with a plea offer that he accepted and that contained the same charges, and the defendant failed to allege that his counsel did not advise him on the charges when he was presented with the previous plea offer.

3. The trial court properly determined that defense counsel did not render ineffective assistance, as the defendant failed to prove the performance prong of his claim; the defendant did not dispute that his counsel provided him with adequate information and advice in connection with the previous plea offer, the record reflected that he understood the factual basis underlying his guilty plea and how those facts supported the charges against him, and the only change to the plea offer was the docket in which the intimidation charge was filed, and the defendant failed to present evidence that his counsel did not previously advise him on possible constitutional concerns of a guilty plea to the intimidation charge.

Argued March 13—officially released August 6, 2024

*Procedural History*

Substitute information charging the defendant with the crimes of reckless endangerment in the second degree, threatening in the second degree, breach of the peace in the second degree, intimidation based on bigotry or bias in the third degree and harassment in the second degree, brought to the Superior Court in the judicial district of New Britain, geographical area number fifteen, where the defendant was presented to the court, *Keegan, J.*, on a plea of guilty to reckless endangerment in the second degree, threatening in the first degree, and intimidation based on bigotry or bias in the second degree; thereafter, the state entered a nolle prosequi as to the remaining charges; subsequently, the court, *Keegan, J.*, denied the defendant's motion to withdraw his plea and rendered judgment of guilty in accordance with the plea, from which the defendant appealed to this court. *Affirmed.*

*Michael W. Brown*, with whom were *Vishal K. Garg* and, on the brief, *Abigail H. Mason*, for the appellant (defendant).

*Rocco A. Chiarenza*, senior assistant state's attorney, with whom, on the brief, were *Christian M. Watson*, state's attorney, *Alison Kubas*, assistant state's attorney, and *Danielle Koch*, deputy assistant state's attorney, for the appellee (state).

*Opinion*

WESTBROOK, J. The defendant, David D. Roberts, appeals from the judgment of conviction rendered following the trial court's denial of his motion to withdraw his guilty plea. On appeal, the defendant claims that the court improperly (1) concluded that it had conducted an adequate plea canvass; (2) (a) failed to hold an evidentiary hearing on his ineffective assistance of counsel claim, and (b) concluded that his guilty plea was not the result of ineffective assistance of counsel;[1] and (3) concluded that General Statutes (Rev. to 2019) § 53a-181*l*[2] is not facially unconstitutional. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts, as set forth by the prosecutor as the factual basis underlying the plea, and procedural history are relevant to our resolution of this appeal. On September 11, 2020, the defendant approached a group of individuals renting his neighbor's property. During this interaction, he cocked and aimed a shotgun at them while calling them racial slurs and telling them to "get the F out of here." The defendant then called the property owner and left a voicemail message in which, as the prosecutor summarized the message, he stated "that he was going to bring the N-words and Puerto Ricans down, and that the owner of the residence was f-ed, and that the war was on if he found out that there would be more people of color renting at that residence."

The defendant was arrested and charged in two separate dockets. He was charged in the first docket for

---

[1] For ease of discussion, we address these claims in a different order from which they were briefed.

[2] We note that the legislature has amended this statute since the events underlying this appeal. See Public Acts 2021, No. 21-78, § 19. All references herein are to the 2019 revision of the statute.

the incident involving the renters (first docket) with reckless endangerment in the second degree in violation of General Statutes § 53a-64,[3] threatening in the second degree in violation of General Statutes § 53a-62,[4] and breach of the peace in the second degree in violation of General Statutes § 53a-181.[5] In the second docket, which pertained to the message he left for the property owner (second docket), the defendant was charged with intimidation based on bigotry or bias in the third degree in violation of § 53a-181*l*,[6] and harassment in the

[3] General Statutes § 53a-64 (a) provides: "A person is guilty of reckless endangerment in the second degree when he recklessly engages in conduct which creates a risk of physical injury to another person."

[4] General Statutes § 53a-62 (a) provides in relevant part: "A person is guilty of threatening in the second degree when: (1) By physical threat, such person intentionally places or attempts to place another person in fear of imminent serious physical injury, (2) (A) such person threatens to commit any crime of violence with the intent to terrorize another person, or (B) such person threatens to commit such crime of violence in reckless disregard of the risk of causing such terror . . . ."

[5] General Statutes § 53a-181 (a) provides: "A person is guilty of breach of the peace in the second degree when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person: (1) Engages in fighting or in violent, tumultuous or threatening behavior in a public place; or (2) assaults or strikes another; or (3) threatens to commit any crime against another person or such person's property; or (4) publicly exhibits, distributes, posts up or advertises any offensive, indecent or abusive matter concerning any person; or (5) in a public place, uses abusive or obscene language or makes an obscene gesture; or (6) creates a public and hazardous or physically offensive condition by any act which such person is not licensed or privileged to do. For purposes of this section, 'public place' means any area that is used or held out for use by the public whether owned or operated by public or private interests."

[6] General Statutes (Rev. to 2019) § 53a-181*l* (a) provides: "A person is guilty of intimidation based on bigotry or bias in the third degree when such person, with specific intent to intimidate or harass another person or group of persons because of the actual or perceived race, religion, ethnicity, disability, sex, sexual orientation or gender identity or expression of such other person or persons: (1) Damages, destroys or defaces any real or personal property, or (2) threatens, by word or act, to do an act described in subdivision (1) of this subsection or advocates or urges another person to do an act described in subdivision (1) of this subsection, if there is reasonable cause to believe that an act described in said subdivision will occur."

second degree in violation of General Statutes (Rev. to 2019) § 53a-183.[7]

On August 31, 2021, the state conveyed a plea offer to the defendant in the first docket that required a guilty plea to a charge of intimidation based on bigotry and bias in the second degree. When the proposed disposition was presented to the court, the court stated that it would only accept a disposition that included a guilty plea to a least one charge in each docket. The state later extended the defendant a second plea offer pursuant to which he would enter a guilty plea to reckless endangerment in the second degree and threatening in the first degree in violation of General Statutes § 53a-61aa[8] in the first docket, and intimidation based on bigotry or bias in the second docket. In return for his guilty pleas, the state would agree to a sentence of six years of incarceration, execution suspended after one year, and three years of probation. The defendant would retain the right to argue for a term of incarceration as short as six months.

On January 14, 2022, the defendant appeared before the court to plead guilty under the *Alford* doctrine[9]

---

[7] General Statutes (Rev. to 2019) § 53a-183 (a) provides: "A person is guilty of harassment in the second degree when: (1) By telephone, he addresses another in or uses indecent or obscene language; or (2) with intent to harass, annoy or alarm another person, he communicates with a person by telegraph or mail, by electronically transmitting a facsimile through connection with a telephone network, by computer network, as defined in section 53a-250, or by any other form of written communication, in a manner likely to cause annoyance or harm; or (3) with intent to harass, annoy or alarm another person, he makes a telephone call, whether or not a conversation ensues, in a manner likely to cause annoyance or alarm."

[8] General Statutes § 53a-61aa (a) provides in relevant part: "A person is guilty of threatening in the first degree when such person . . . (3) commits threatening in the second degree as provided in section 53a-62, and in the commission of such offense such person uses or is armed with and threatens the use of or displays or represents by such person's words or conduct that such person possesses a pistol, revolver, shotgun, rifle, machine gun or other firearm . . . ."

[9] See *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

in accordance with the second plea offer. During the hearing, however, the court, *Keegan, J.*, expressed doubt about the sufficiency of the factual basis for applying the charge of intimidation based on bigotry or bias to the second docket. The state offered to instead put the defendant to plea on the charge of intimidation based on bigotry or bias in the first docket and defense counsel agreed to this change. The defendant was therefore put to plea in only the first docket. The defendant pleaded guilty under the *Alford* doctrine to reckless endangerment in the second degree and threatening in the first degree and entered a straight guilty plea to intimidation based on bigotry or bias. The following colloquy occurred, in relevant part, during the plea canvass:

"The Court: Okay. So, what they're going to do is, they're going to change that guilty plea on the intimidation in the third degree to the original file, everything that happened with the renters. So, with that factual understanding, what is your plea, guilty or not guilty?

"The Defendant: Guilty.

"The Court: All right, I'm going to ask you questions now about the plea. Any questions you don't understand, or you need to speak to your attorney, please let me know. . . .

"All right, sir. Have you had enough time to speak with your lawyer about your case and your decision to plead guilty to the intimidation charge, and guilty under the *Alford* doctrine to the charges of reckless endangerment and threatening in the first degree?

"The Defendant: Guilty.

"The Court: Do you understand?

"The Defendant: Yes.

"The Court: My question is do you understand? Have you had enough time?

"The Defendant: Yes.

"The Court: All right. And did you review with your attorney all the facts that led to your arrest on all three of those charges?

"The Defendant: Yes.

"The Court: And you understand the day we're talking about, that these charges led to, right?

"The Defendant: Yes.

"The Court: All right. Now, did your attorney go through with you the elements of each crime? What the state has to prove in order for someone to be found guilty of that crime?

"The Defendant: Yes.

"The Court: And do you understand how the facts recited by the prosecutor support, they meet the legal burden for each of those crimes?

"The Defendant: Yes.

"The Court: With respect to the intimidation, you do admit your guilt upon that charge, correct?

"The Defendant: Yes.

"The Court: And with respect to the other two charges, you don't agree with all the factual bas[es], but you do not want to take this to trial. You do understand that the state has sufficient evidence to prosecute you and therefore you want to enter into a plea agreement, is that fair to say?

"The Defendant: Yes.

"The Court: Is that the reason you're entering your plea under the *Alford* doctrine?

"The Defendant: Yes.

"The Court: Thank you. Did your attorney explain to you all the constitutional rights that you give up today, because of your plea?

"The Defendant: Yes.

"The Court: All right, and did anyone force you in any way to cause you to enter your pleas today?

"The Defendant: No.

"The Court: Are you doing so voluntarily?

"The Defendant: Yes.

"The Court: And did you take anything today that interferes with your ability to understand what you're doing in court?

"The Defendant: No.

"The Court: Are you satisfied with your lawyer's representation of you?

"The Defendant: Yes.

\* \* \*

"The Court: All right. All right, once I accept your pleas, sir, you will not be able to take them back unless you have a valid, legal reason to do so. So, you need to be sure today that this is how you want to resolve . . . your case. Are you sure about that?

"The Defendant: Yes.

"The Court: All right . . . . Either attorney know of any reason the court should not accept the pleas?

"[The Prosecutor]: No, Your Honor.

"[Defense Counsel]: No, Your Honor. Thank you.

"The Court: The court will accept the pleas, find them knowingly and voluntarily made with the assistance of

competent counsel. There is a factual basis, plea is accepted. Findings of guilty may enter." The court thereafter continued the matter to April 13, 2022, for sentencing.

After the entry of the guilty plea, but before the scheduled sentencing hearing, the defendant, through substitute counsel, filed a motion to withdraw his guilty plea.[10] In his motion, he claimed that his plea was invalidly entered because (1) the court did not specifically identify the constitutional rights that the defendant waived by entering his guilty plea and, thus, conducted an inadequate plea canvass, (2) defense counsel failed to properly consult with or advise him prior to accepting a change in the plea agreement, and (3) his guilty plea to the intimidation charge was a result of ineffective assistance of counsel. The defendant requested an evidentiary hearing only as to the ineffective assistance of counsel claim.

On September 9, 2022, the court held a hearing on the defendant's motion to withdraw his plea. During the hearing, the defendant, through substitute counsel, argued that his plea canvass was insufficient to establish that his plea was made knowingly, voluntarily, and intelligently. He argued that the plea canvass regarding the constitutional rights waived by the plea was too general and that "there needs to be a canvass on the specific bundle of rights that a defendant is waiving . . . ." The defendant additionally argued that his guilty plea to the intimidation charge was uncounseled because his prior attorney agreed to change the defendant's plea on the intimidation charge in the middle of the hearing without first consulting with him. He argued that, given the circumstances, it was "impossible that

---

[10] The defendant initially filed the motion to withdraw his guilty plea on April 11, 2022. On August 15, 2022, he filed a "renewed" motion to withdraw his guilty plea in which he set forth additional arguments.

there had been an actual discussion between [the defendant] and his attorney about what this new package offer was, as it was happening live on the record in front of the court." He last argued that defense counsel provided ineffective assistance of counsel because he had failed to explain to the defendant how the new factual basis supported the intimidation charge. He argued that there was "no indication that [he] understood . . . the first amendment issues that were raised by the factual basis that [was] offered" and that his attorney was therefore ineffective. In connection with this claim, the defendant argued that § 53a-181*l* unconstitutionally punished speech. Although the defendant had requested an evidentiary hearing in his motion, he did not request, during the scheduled hearing, to present evidence or request that the court hold an evidentiary hearing.

The state countered that, although the court did not list the three core constitutional rights delineated in *Boykin* v. *Alabama*, 395 U.S. 238, 243, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), in its canvass of the defendant, substantial compliance, rather than strict compliance, is required under our Supreme Court's holding in *State* v. *Badgett*, 200 Conn. 412, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986). It further argued that the record shows that the defendant's plea was made knowingly, voluntarily, and intelligently because the court "repeatedly asked the defendant if he was [pleading guilty] voluntarily [and] asked the defendant if his attorney had gone over all of his constitutional rights that he was giving up by doing the plea." Additionally, the state argued that the record was clear that defense counsel had previously discussed the disposition of the case with the defendant because "that disposition had actually been contemplated and was going forward [in an earlier court proceeding]. That counsel had already prepared the defendant for that

plea deal, and but for the judge not accepting that offer . . . and wanting it to be changed to the new disposition which involved [a plea] in all [the] files it would have gone forward with the plea and the sentencing that date." The state last argued that the defendant's first amendment claim was not a proper ground on which the defendant could base his motion to withdraw his guilty plea.

At the end of the hearing, the court denied the defendant's motion, concluding that the plea canvass substantially complied with the requirements of Practice Book § 39-19[11] and that there was no ineffective assistance of counsel. The court additionally concluded that "the factual basis presented at the time of the plea [was] sufficient for [§ 53a-181*l*] and . . . does not violate our . . . constitution." The defendant was then sentenced to a total effective sentence of six years of incarceration, execution suspended after nine months, followed by three years of probation.[12] This appeal followed.

We begin by setting forth the following standard of review and relevant legal principles. "Practice Book

---

[11] Practice Book § 39-19 provides: "The judicial authority shall not accept the plea without first addressing the defendant personally and determining that he or she fully understands:

(1) The nature of the charge to which the plea is offered;

(2) The mandatory minimum sentence, if any;

(3) The fact that the statute for the particular offense does not permit the sentence to be suspended;

(4) The maximum possible sentence on the charge, including, if there are several charges, the maximum sentence possible from consecutive sentences and including, when applicable, the fact that a different or additional punishment may be authorized by reason of a previous conviction; and

(5) The fact that he or she has the right to plead not guilty or to persist in that plea if it has already been made, and the fact that he or she has the right to be tried by a jury or a judge and that at that trial the defendant has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him or her, and the right not to be compelled to incriminate himself or herself."

[12] The state nolled the remaining charges in the second docket.

§ 39-26 provides in relevant part: A defendant may withdraw his or her plea of guilty . . . as a matter of right until the plea has been accepted. After acceptance, the judicial authority shall allow the defendant to withdraw his or her plea upon proof of one of the grounds in [Practice Book §] 39-27. A defendant may not withdraw his or her plea after the conclusion of the proceeding at which the sentence was imposed.

"[O]ur standard of review is abuse of discretion for decisions on motions to withdraw guilty pleas brought under Practice Book § 39-27. . . . [Section 39-27] specifies circumstances under which a defendant may withdraw a guilty plea after it has been entered.[13] [O]nce entered, a guilty plea cannot be withdrawn except by leave of the court, within its sound discretion, and a denial thereof is reversible only if it appears that there has been an abuse of discretion. . . . The burden is always on the defendant to show a plausible reason for withdrawal of a plea of guilty. . . .

"In determining whether the trial court [has] abused its discretion, this court must make every reasonable presumption in favor of [the correctness of] its action. . . . Our review of a trial court's exercise of the legal

[13] Practice Book § 39-27 provides: "The grounds for allowing the defendant to withdraw his or her plea of guilty after acceptance are as follows:

"(1) The plea was accepted without substantial compliance with Section 39-19;

"(2) The plea was involuntary, or it was entered without knowledge of the nature of the charge or without knowledge that the sentence actually imposed could be imposed;

"(3) The sentence exceeds that specified in a plea agreement which had been previously accepted, or in a plea agreement on which the judicial authority had deferred its decision to accept or reject the agreement at the time the plea of guilty was entered;

"(4) The plea resulted from the denial of effective assistance of counsel;

"(5) There was no factual basis for the plea; or

"(6) The plea either was not entered by a person authorized to act for a corporate defendant or was not subsequently ratified by a corporate defendant."

discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Footnote altered; internal quotation marks omitted.) *State* v. *Lynch*, 193 Conn. App. 637, 657–58, 220 A.3d 163 (2019), cert. denied, 335 Conn. 914, 229 A.3d 729 (2020).

I

The defendant first claims that the court improperly concluded that it conducted an adequate plea canvass. He argues that the plea canvass was inadequate because the record of the canvass does not indicate that the defendant expressly waived the following three constitutional rights enumerated in *Boykin* v. *Alabama*, supra, 395 U.S. 243: the privilege against self-incrimination, the right to a jury trial, and the right to confront one's accusers. He contends that, in the absence of an express waiver of each right, the plea canvass is insufficient to demonstrate that he understood that his guilty plea waived these fundamental constitutional rights, and that his guilty plea was therefore invalid because it was not knowingly, voluntarily, and intelligently made. The state counters that the court properly concluded that the canvass was adequate because "the plea canvass expressly included the defendant's affirmative answer to the question '[d]id your attorney explain to you all the constitutional rights that you give up today, because of your plea' " and the defendant failed to offer any evidence that his counsel failed to explain the constitutional rights that were waived. The state argues that "the plea canvass here, as a whole, satisfied the requirements of *Boykin* in demonstrating a knowing and voluntary guilty plea" and substantially complied with the requirements of Practice Book § 39-19 (5). We conclude that the record, read as a whole, demonstrates that the defendant's plea was knowingly, voluntarily, and intelligently made.

"Several federal constitutional rights [as enunciated in *Boykin* v. *Alabama*, supra, 395 U.S. 243] are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination . . . [s]econd, is the right to trial by jury . . . [t]hird, is the right to confront one's accusers. . . .[14] Further, under the Connecticut rules of practice, a trial judge must not accept a plea of [guilty or] nolo contendere without first addressing the defendant personally and determining that the plea is voluntarily made under Practice Book § [39-20] and that the defendant fully understands the items enumerated in Practice Book § [39-19]." (Footnote in original; internal quotation marks omitted.) *State* v. *Hurdle*, 217 Conn. App. 453, 473, 288 A.3d 675, cert. granted, 346 Conn. 923, 295 A.3d 420 (2023).

Our Supreme Court stated in *State* v. *Badgett*, supra, 200 Conn. 420, that "[l]iteral compliance [with the precise language of *Boykin*] is *not* constitutionally required." (Emphasis in original.) In *Badgett*, the defendant claimed that the court had not properly informed him that his guilty plea operated as a waiver of his right to a trial by jury. The defendant argued that, during the plea canvass, the court asked him only if he was " 'giving up [his] right to trial at this present time,' " without specifically referencing the right to a *jury* trial. Id., 419. The court reasoned that, "[a]lthough *Boykin* requires that relinquishment of the right to a trial by jury must be evident and cannot be presumed from a 'silent' record . . . the trial court's express mention of waiver of the right to *trial*, combined with the defendant's prior election for a jury trial, his experience with criminal

___

[14] "The same rights are guaranteed under our state constitution in article first, § 8, as amended by article seventeen of the amendments. See *State* v. *Suggs*, 194 Conn. 223, 227 n.3, 478 A.2d 1008 (1984)." *State* v. *Hurdle*, 217 Conn. App. 453, 473 n.16, 288 A.3d 675, cert. granted, 346 Conn. 923, 295 A.3d 420 (2023).

proceedings and apparently adequate representation by counsel," rendered the plea canvass constitutionally sufficient. (Emphasis in original.) Id., 419–20.

The purpose of the plea canvass, as articulated by the United States Supreme Court in *Boykin,* is to "make certain [the accused] has a full understanding of what the plea connotes and of its consequence so that there is an adequate record for review. The plea of guilty by the defendant must represent a voluntary and intelligent choice among the alternative courses of action open to the defendant. . . . A plea of guilty is in effect a conviction and the equivalent of a finding of guilty by a jury and a court should not allow a defendant to enter such a plea until the court is satisfied that it is freely made and that the party making it understands its purport and effect." (Citation omitted.) *State* v. *Bugbee,* 161 Conn. 531, 534, 290 A.2d 332 (1971).

"[The Supreme Court] indicated in *Consiglio* v. *Warden,* 160 Conn. 151, 164, 165, 276 A.2d 773 [1970], that the rule in *Boykin* v. *Alabama,* [supra, 395 U.S. 238], does not render invalid a conviction based on a guilty plea when there were facts in the record on the basis of which a reasonable presumption could be made that the plea was intelligent and voluntary. The record in the *Consiglio* case . . . disclosed that the plaintiff was questioned at length by the trial judge and it was ascertained that his plea was made after a discussion with the public defender. The trial judge also ascertained from [the plaintiff] the factual basis of the charge that he was a third offender. These factors, in conjunction with several others, led the court to conclude . . . that the record in the case was not 'a silent record.' " (Citations omitted.) *State* v. *Bugbee,* supra, 161 Conn. 535.

Our Supreme Court concluded in *State* v. *Bugbee,* supra, 161 Conn. 534–36, that *Boykin* was not satisfied

when the court did not ask questions about the defendant's waiver of his constitutional rights, but, rather, just asked the defendant how he pleaded to the charges without any further inquiry. Id. The court reasoned that, because "[t]he record in the present case does not reveal any facts from which a reasonable conclusion could be drawn that the plea was intelligent and voluntary," and because "[n]othing was ascertained from the defendant regarding his plea and the court did not inquire into the factual basis of the plea"; id., 535; that, therefore, "[t]he record in [that] case [could] be characterized as a 'silent record' and [did] not comply with constitutional standards as determined in the *Boykin* case." Id., 535–36.

In the present case, the court specifically asked the defendant if "[his] attorney explain[ed] to [him] all the constitutional rights that [he] [gave] up today, because of [his] plea?" The defendant responded, "*Yes*." (Emphasis added.)

It is reasonable to conclude from the record as a whole that, although the court did not restate each of the three *Boykin* constitutional rights during the plea canvass, the defendant was cognizant of these rights prior to entering his guilty plea because he affirmed during the plea canvass that his attorney had fully explained the constitutional rights he was waiving. The defendant does not argue that his attorney did *not* explain the three constitutional rights enumerated in *Boykin* to him but simply alleges that, because the three rights were not explicitly outlined by the court during the plea canvass, it is not apparent that his waiver of these rights was made knowingly, voluntarily and intelligently.

*Boykin* does not require any specific canvass, or talismanic words, but rather holds only that the court "cannot presume a waiver of [the] three important federal

rights *from a silent record.*" (Emphasis added.) *Boykin* v. *Alabama*, supra, 395 U.S. 243. In the present case, the record is not silent. Like the record in *Consiglio* v. *Warden*, supra, 160 Conn. 164, the record here reflects that the judge questioned the defendant at length, including questions in which the defendant affirmed that he was voluntarily pleading guilty, and that he was "sure today that this is how [he] want[ed] to resolve [his] case". It is therefore apparent from the record that the defendant understood all the implications of his guilty plea and, nevertheless, was certain that he wanted to plead guilty. The court additionally asked the defendant's counsel whether he knew of any reason that the court should not accept the defendant's guilty plea, and his counsel affirmed that he did not. Taken as a whole, therefore, the record of the plea canvass shows that the defendant's guilty plea was made knowingly, voluntarily and intelligently.

Our Supreme Court consistently has concluded that the lack of an on the record discussion between the trial court and a defendant with respect to each of the constitutional rights being waived does not itself render a defendant's decision to waive those rights unknowing, involuntary, or unintelligent. See *State* v. *Shockley*, 188 Conn. 697, 710, 453 A.2d 441 (1982) (holding that there is no constitutional requirement that trial judge advise defendant of each right that defendant gives up by pleading guilty by name and that "[t]he true substantive question is whether the election was in fact intelligently and voluntarily made and the record so demonstrates"); *Blue* v. *Robinson*, 173 Conn. 360, 373–76, 377 A.2d 1108 (1977) (affirming denial of petition for writ of habeas corpus when canvass failed to address any of three *Boykin* rights because record showed "that the court accepted the plea after inquiry and an express finding that it 'was made voluntarily with full knowledge of the charge and of the possible penalties and after the advice

of counsel' ''); *State* v. *Slater*, 169 Conn. 38, 45–46, 362 A.2d 499 (1975) (affirming denial of motion to vacate guilty plea when canvass failed to address privilege against self-incrimination and right to confront one's accusers). We therefore conclude that, although the court did not discuss on the record each of the three constitutional rights delineated in *Boykin*, it is nevertheless clear from the record as a whole that the defendant's plea was made knowingly, voluntarily and intelligently.[15] Because the record reflects that the defendant had a full understanding of what his guilty plea meant and because he affirmed during the plea canvass that his attorney explained to him the constitutional consequences of his guilty plea, the plea canvass sufficiently establishes that the defendant's plea was made knowingly, voluntarily, and intelligently. Accordingly, we conclude that the court correctly concluded that the plea canvass was sufficient.

II

The defendant next claims that the court erred in not holding an evidentiary hearing with respect to his ineffective assistance of counsel claim and that the court improperly concluded that his guilty plea to the intimidation charge was not the result of ineffective assistance of counsel. He specifically contends that the court improperly concluded that his counsel's performance was reasonable despite counsel's failure to advise the defendant "on the nature of the charge and how the facts to which he was pleading related to the

---

[15] We emphasize that, although our case law is clear that the constitutional rights delineated in *Boykin* are validly waived if the record shows that, even where the court did not discuss each of the constitutional rights being waived, the guilty plea was made knowingly, voluntarily and intelligently, the best practice is for a court to individually question the defendant about these rights during the plea canvass so the record is abundantly clear that the defendant is aware of all the constitutional implications of his or her guilty plea.

legal charge" when the charges were changed during the plea hearing. We are not persuaded.

"Almost without exception, we have required that a claim of ineffective assistance of counsel must be raised by way of habeas corpus, rather than by direct appeal, because of the need for a full evidentiary record for such [a] claim. . . . Absent the evidentiary hearing available in the collateral action, review in this court of the ineffective assistance claim is at best difficult and sometimes impossible. The evidentiary hearing provides the trial court with the evidence which is often necessary to evaluate the competency of the defense and the harmfulness of any incompetency. . . .

"Practice Book § 39-27 (4) provides an explicit exception to this general rule, however, and allows a defendant to withdraw a guilty plea after its acceptance if the plea resulted from the denial of effective assistance of counsel. . . . We recognize, therefore, that the defendant's claim of ineffective assistance of counsel is procedurally correct. Nevertheless, we are mindful that on the rare occasions that we have addressed an ineffective assistance of counsel claim on direct appeal . . . we have limited our review to situations in which the record of the trial court's allegedly improper action was adequate for review or the issue presented was a question of law, not one of fact requiring further evidentiary development. We point out, finally, that irrespective of whether a defendant proceeds by way of habeas corpus or direct appeal, our review is the same, and the burden remains on the defendant to produce an adequate record so that an appellate court may ascertain whether counsel's performance was ineffective. . . .

"A defendant must satisfy two requirements . . . to prevail on a claim that his guilty plea resulted from ineffective assistance of counsel. . . . First, he must

prove that the assistance was not within the range of competence displayed by lawyers with ordinary training and skill in criminal law . . . . Second, there must exist such an interrelationship between the ineffective assistance of counsel and the guilty plea that it can be said that the plea was not voluntary and intelligent because of the ineffective assistance. . . . In addressing this second prong, the United States Supreme Court held in *Hill* v. *Lockhart*, 474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985), that to satisfy the prejudice requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. . . . The resolution of this inquiry will largely depend on the likely success of any new defenses or trial tactics that would have been available but for counsel's ineffective assistance. . . . In its analysis, a reviewing court may look to the performance prong or to the prejudice prong, and the petitioner's failure to prove either is fatal to a [claim of ineffective assistance of counsel]." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Lynch*, supra, 193 Conn. App. 658–59.

## A

The defendant first argues that the court improperly failed to hold an evidentiary hearing on his ineffective assistance of counsel claim prior to denying his motion to withdraw his guilty plea. He argues that he had sufficiently questioned defense counsel's performance to warrant an evidentiary hearing and that the court improperly denied his request to hold an evidentiary hearing on this claim. The state counters that the court never precluded the defendant from presenting evidence in support of his claim, and that, even if it had, the court properly declined to hold an evidentiary hearing because the record conclusively establishes that the

defendant's motion is without merit. We agree with the state.

"An evidentiary hearing is not required if the record of the plea proceeding and other information in the court file conclusively establishes that the motion is without merit. . . . In considering whether to hold an evidentiary hearing on a motion to withdraw a guilty plea the court may disregard any allegations of fact, whether contained in the motion or made in an offer of proof, which are either conclusory, vague or oblique. For the purpose of determining whether to hold an evidentiary hearing, the court should ordinarily assume any specific allegations of fact to be true. If such allegations furnish a basis for withdrawal of the plea under [Practice Book § 39-27] . . . and are not conclusively refuted by the record of the plea proceedings and other information contained in the court file, then an evidentiary hearing is required. . . .

"An evidentiary hearing is not required if the record of the plea proceeding and other information in the court file conclusively establishes that the motion is without merit. . . . The burden is always on the defendant to show a plausible reason for the withdrawal of a plea of guilty. . . . To warrant consideration, the defendant must allege and provide facts which justify permitting him to withdraw his plea under [Practice Book § 39-27]." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Salas*, 92 Conn. App. 541, 544, 885 A.2d 1258 (2005).

"We further observe that there is no language in Practice Book §§ 39-26 and 39-27 imposing an affirmative duty upon the court to conduct an inquiry into the basis of a defendant's motion to withdraw his guilty plea. . . . [T]he administrative need for judicial expedition and certainty is such that trial courts cannot be

expected to inquire into the factual basis of a defendant's motion to withdraw his guilty plea when the defendant has presented no specific facts in support of the motion. To impose such an obligation would do violence to the reasonable administrative needs of a busy trial court, as this would, in all likelihood, provide defendants strong incentive to make vague assertions of an invalid plea in hopes of delaying their sentencing. . . .

"When the trial court does grant a hearing on a defendant's motion to withdraw a guilty plea, the requirements and formalities of the hearing are limited. . . . Indeed, a hearing may be as simple as offering the defendant the opportunity to present his argument on his motion for withdrawal. . . . As one court observed, an *evidentiary* hearing is rare, and, outside of an evidentiary hearing, often a limited interrogation by the [c]ourt will suffice [and] [t]he defendant should be afforded [a] reasonable opportunity to present his contentions." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Simpson*, 329 Conn. 820, 837, 189 A.3d 1215 (2018).

For purposes of our analysis here, we first construe the defendant's claim as challenging the court's failure to sua sponte hold an evidentiary hearing. Although the defendant's motion stated that an evidentiary hearing was requested, the defendant did not renew this request during the hearing that followed. In arguing that defense counsel was ineffective because there was no indication that the defendant understood the possible first amendment implications of the guilty plea as charged, defense counsel mentioned in passing that "maybe an evidentiary hearing would elaborate on this." He did not thereafter request to present evidence.

The defendant did not address his ineffective assistance of counsel claim further after the state pointed

to the fact that the disposition had been previously contemplated and the parties had been prepared to go forward with it in an earlier court proceeding. The defendant had an opportunity to respond to the state and argue why an evidentiary hearing was required to clarify whether defense counsel had in fact advised him of the effect of this disposition and to present evidence in support of his assertion that defense counsel nevertheless had failed to advise him of this disposition. The defendant, however, failed to do so. See *State* v. *Hanson*, 117 Conn. App. 436, 454, 979 A.2d 576 (2009) (noting that court had no responsibility to require presentation of evidence), cert. denied, 295 Conn. 907, 989 A.2d 604, cert. denied, 562 U.S. 986, 131 S. Ct. 425, 178 L. Ed. 2d 331 (2010).

We continue the analysis by assuming without deciding that the court was apprised of the fact that that the defendant continued to seek an evidentiary hearing and implicitly denied such hearing in denying the defendant's motion. Even under that assumption, we conclude that the defendant had not met his burden of setting forth sufficient facts to warrant an evidentiary hearing. In support of his motion, the defendant argued to the trial court that, although he answered affirmatively when asked during the plea canvass whether he was advised of the essential elements of the crimes charged, the record clearly demonstrates that counsel failed to properly advise him. He now argues before this court that it was therefore an error for the trial court to rely on the record of the canvass in denying his motion to vacate his guilty plea without first affording him an evidentiary hearing on the merits of his ineffective assistance of counsel claim.

Reviewing the plea canvass and the record as a whole, we conclude that the defendant did not meet his burden of showing a plausible reason for the withdrawal of his guilty plea sufficient to require an evidentiary hearing.

The only reason offered in support of his motion was that the record of the plea hearing clearly established that his counsel failed to advise him on the charges in the new plea deal and therefore clearly showed that his counsel rendered deficient performance. The record of the plea proceeding, however, conclusively refutes the allegations in the defendant's motion because it demonstrates that the defendant had previously been presented with a plea offer that he later accepted and that was the impetus for his guilty plea. The defendant has failed to allege that his counsel did not advise him of the charge when he was presented with the initial plea offer. We accordingly conclude that the defendant failed to set forth sufficient facts to require an evidentiary hearing.

B

The defendant further argues that counsel was ineffective because, at the time of the plea hearing, he did not advise the defendant of the nature of the charge of intimidation based on bigotry or bias to which he was pleading guilty or how the facts relate to that charge and because counsel failed to advise him of possible constitutional concerns with § 53a-181*l*. We are not persuaded.

The record reflects that the first docket included a charge of intimidation based on bigotry or bias as early as August 31, 2021, several months prior to the defendant's plea hearing. The state first made a plea offer that included a charge of intimidation based on bigotry and bias in the second degree in the first docket. The defendant, through his counsel, acknowledged the state's offer and asked the court for a date by which he could accept or reject the offer. Additionally, during the plea hearing on January 14, 2022, defense counsel stated on the record that the defendant "was originally going to plea[d] [guilty] to intimidation based on bigotry

and bias" in the first docket, but that, at the pretrial judge's insistence, the offer was instead amended to include the intimidation charge in the second docket.

The prior plea offer required the defendant to plead guilty to the same charge to which he later pleaded guilty. The defendant does not dispute that counsel provided him with adequate information and advice in connection with the prior plea offer. Thus, without any evidence to the contrary, we may presume that counsel provided adequate information and advice to the defendant on which the defendant could make an informed decision as to whether to accept the offer. "[I]t is appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit." (Internal quotation marks omitted.) *State* v. *Lopez*, 269 Conn. 799, 802, 850 A.2d 143 (2004); see also *Oppel* v. *Meachum*, 851 F.2d 34, 38 (2d Cir.) ("under *Henderson* v. *Morgan*, [426 U.S. 637, 647, 96 S. Ct. 2253, 49 L. Ed. 2d 108 (1976)] it is normally presumed that the defendant is informed by his attorney of the charges against him and the elements of those charges"), cert. denied, 488 U.S. 911, 109 S. Ct. 266, 102 L. Ed. 2d 254 (1988). We can therefore presume that, prior to the January 14, 2022 plea hearing, defense counsel informed the defendant about the nature of the charge and how the charge applied to the facts.

Moreover, the record reflects that the defendant understood the factual basis underlying his guilty plea and how those facts supported the charges against him. During his plea canvass, the defendant stated that he had reviewed the facts that led to his arrest on all three charges with his attorney, he understood the day to which the court was referring and how the charges pertained to that day, and his attorney had explained the elements of each charge to him. He additionally affirmed that he was satisfied with the legal advice

he received from his attorney after the change to the charges had occurred.

We additionally conclude that the defendant failed to establish that his counsel rendered ineffective assistance by failing to advise him of possible constitutional concerns with § 53a-181*l*. He argues that it must be the case that his counsel failed to advise him of any constitutional concerns implicated by his guilty plea under § 53a-181*l* because the plea offer was changed in the middle of the hearing. As addressed at length previously in part II, however, the prior plea offer was the same offer to which he later pleaded. The only change made to the plea offer was the docket in which the charge of intimidation based on bigotry or bias was filed. The defendant therefore pleaded guilty to the same crime, only under a different docket.

The fact that counsel did not stop to discuss the change in the plea with the defendant *during* the plea hearing does not indicate that counsel did not previously advise the defendant of the possible constitutional concerns of § 53a-181*l*. We therefore conclude that the defendant has failed to meet his burden in showing that his counsel's performance was not within the range of competence demanded of attorneys in criminal cases, and, therefore, conclude that the defendant has failed to prove the performance prong.

Because we conclude that the defendant has failed to prove the performance prong and the failure to prove either of the two prongs is fatal to a claim of ineffective assistance of counsel; see, e.g., *State* v. *Lynch*, supra, 193 Conn. App. 659; we need not address the prejudice prong. We accordingly conclude that the court properly determined that there was no ineffective assistance of counsel.

### III

The defendant finally claims that § 53a-181*l* is facially unconstitutional under the first amendment because it

"plainly criminalizes conduct that could not be considered a 'true threat'[16] and does so explicitly on the basis of the viewpoint of the speaker." (Footnote added.) We conclude that the defendant has failed to adequately brief his claim and accordingly decline to review it.[17]

"We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited." (Citation omitted; internal quotation marks omitted.) *State* v. *Buhl*, 321 Conn. 688, 724, 138 A.3d 868 (2016). "Claims are inadequately briefed when they are merely mentioned and not briefed beyond a bare assertion. . . . Claims are also inadequately briefed when they . . . consist of conclusory assertions . . . with no mention of relevant authority and minimal or no citations from the record . . . ." (Internal quotation

---

[16] "The first amendment . . . does not protect speech that qualifies as [t]rue threats. . . . True threats encompass those statements [in which] the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Parnoff*, 329 Conn. 386, 394, 186 A.3d 640 (2018).

[17] Although the state argues that this claim is not properly before this court because the defendant failed to raise it *prior* to his guilty plea, citing the United States Supreme Court cases of *Class* v. *United States*, 583 U.S. 174, 138 S. Ct. 798, 200 L. Ed. 2d 37 (2018), and *Haynes* v. *United States*, 390 U.S. 85, 88 S. Ct. 722, 19 L. Ed. 2d 923 (1968), for the proposition that only a *preplea challenge* to the constitutionality of a statute may be raised on appeal, we need not decide this issue because we conclude that the defendant's claim that § 53a-181*l* is facially unconstitutional is inadequately briefed.

marks omitted.) *Estate of Rock* v. *University of Connecticut*, 323 Conn. 26, 33, 144 A.3d 420 (2016).

The defendant argues in his appellate brief that the statute "plainly criminalizes conduct that could not be considered a 'true threat' and does so explicitly on the basis of the viewpoint of the speaker." He asserts, with no relevant citations or legal support, that "[a] threat against property is not a true threat of violence, as acts of violence are commonly understood to be acts committed against *persons*. Even if there is a usage of the word 'violence' that includes a threat to property, it would not be the type of violence discussed by the United States Supreme Court in its 'true threats' jurisprudence." (Emphasis in original.) Although the defendant cites a Supreme Court case, *Virginia* v. *Black*, 538 U.S. 343, 344, 123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003), which states that "[i]ntimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death," he does not engage in meaningful analysis that considers the application of *Black* to § 53a-181*l*. Instead, he offers only hypothetical examples of the overbreadth of the statute[18] and conclusively states that, although these hypothetical statements "might be obnoxious and constitute harassment under certain circumstances, they cannot be criminalized simply because they harass a certain group of individuals. Such statements do not fall into any category that has ever been recognized as the unprotected category of nonspeech, and clearly it is only speech and not conduct."

___

[18] The defendant argues: "The statute is also broad enough to cover mere threats to personal property of others that would not constitute unprotected speech. For example, the statute would criminalize a neighbor's expression that they intend to destroy a neighbor's pride flag, Black Lives Matters sign, or nativity scene."

The defendant additionally devotes very little argument to his claim that § 53a-181*l* is facially unconstitutional. "Although the number of pages devoted to an argument in a brief is not necessarily determinative, relative sparsity weighs in favor of concluding that the argument has been inadequately briefed. This is especially so with regard to first amendment and other constitutional claims, which are often analytically complex. See, e.g., *Schleifer* v. *Charlottesville*, 159 F.3d 843, 871–72 (4th Cir. 1998) ('[f]irst [a]mendment jurisprudence is a vast and complicated body of law that grows with each passing day' and involves 'complicated and nuanced constitutional concepts'), cert. denied, 526 U.S. 1018, 119 S. Ct. 1252, 143 L. Ed. 2d 349 (1999); *Missouri* v. *National Organization for Women, Inc.*, 620 F.2d 1301, 1326 (8th Cir.) (first amendment issues are 'complex'), cert. denied, 449 U.S. 842, 101 S. Ct. 122, 66 L. Ed. 2d 49 (1980); see also *In re Melody L.*, 290 Conn. 131, 154–55, 962 A.2d 81 (2009) (one and one-half page equal protection claim was inadequate), overruled on other grounds by *State* v. *Elson*, 311 Conn. 726, 746–47, 91 A.3d 862 (2014); *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, [266 Conn. 108, 120, 830 A.2d 1121 (2003)] (claim under takings clause was inadequately briefed when plaintiff provided 'no authority or analysis in support of its specific claim'); *In re Shyliesh H.*, 56 Conn. App. 167, 181, 743 A.2d 165 (1999) (attempt to brief two constitutional claims in two and one-half pages was inadequate)." *State* v. *Buhl*, supra, 321 Conn. 726. We therefore conclude that the defendant's constitutional challenge to § 53a-181*l* is inadequately briefed and we decline to review it.

The judgment is affirmed.

In this opinion the other judges concurred.